EASTERBROOK, Chief Judge.
Following a hit-and-run collision, the driver of the struck vehicle took off in pursuit of the fleeing one. Walter Chandler, who had left the scene, eventually turned into what appeared to be a dead-end alley; Lisa Rhodes pulled up behind him, blocking his exit. Rhodes had the advantage of numbers. She was accompanied by Sara Bridewell, Randy Manuel, and Anthony Watkins. All but Watkins got out of the car and confronted Chandler. Rhodes reached into Chandler’s car and took the key. Before long, Bridewell yelled that Chandler had a gun and the three moved off. A shot rang out. The horn of Chandler’s car began to sound; his head was pressing the button. Minutes later two men were seen in the alley; they may have been Manuel, and Watkins, but perhaps not. A witness, who saw one of these two carrying a gun, heard two more shots.
These men left and police arrived. Bridewell and Rhodes approached the police and told them that Chandler had shot at them. (They did not know his name yet, but we use names to simplify the story.) Two detectives, Kevin Eberle and Brian Forberg, found Chandler dead, with a gun near his hand. They concluded that he had been shot three times. They also learned from the witness that two men had accompanied Rhodes and Bridewell, something they had not volunteered. They took Bridewell and Rhodes into custody, *675 then located and arrested Manuel and Watkins.
After extended interrogation, both Rhodes and Watkins told the police that Bridewell had shot Chandler. (Manuel invoked his rights under Miranda and was not questioned further.) Bridewell was charged with murder. She was already under indictment for possession of cocaine with intent to distribute. Rhodes, Manuel, and Watkins were released.
After three years in custody, Bridewell pleaded guilty to a reduced drug charge (possession only) and was sentenced to time served; prosecutors dismissed the murder charge by filing a nolle prosequi. More than a year earlier, Bridewell, Rhodes, and Manuel had filed this suit against Eberle, Forberg, and the City of Chicago under 42 U.S.C. § 1983, contending that their arrests were unlawful. None of the plaintiffs contended that the interrogations had been coercive or otherwise improper, though Bridewell raises this subject indirectly under state law (we return to the issue at pages 677-78). Bridewell added three claims unique to her: that the police took longer than the fourth amendment allows to present her to a judge, that the murder charge constituted malicious prosecution, and that the defendants tortiously caused her to suffer emotional distress. The district judge granted summary judgment to all three defendants on all four claims. 2012 WL 2458548, 2012 U.S. Dist. Lexis 88671 (N.D.I11. June 27, 2012).
The district court found that Eberle and Forberg had probable cause to believe that Bridewell, Rhodes, and Manuel either shot Chandler or aided the killer. Police found a dead body and learned from the witness plus Bridewell and Rhodes that Chandler had been pursued, trapped, and confronted by people who were angry with him. Multiple shots were heard. The witness saw Bridewell and her companions run away. One inference was that one or more of them had shot Chandler. It was not the only possible inference. Perhaps the two men who came to the alley later had fired the fatal shots and were strangers to the quartet. Perhaps Chandler shot himself, intentionally or by accident when trying to harm or scare his pursuers. The police thought this unlikely; they saw three holes in Chandler’s head, implying that at least two of the shots had been fired by someone else.
A medical examination revealed only two holes, made by a single bullet. But probable cause is not determined by retrospect. It depends on what the police know, or reasonably believe, at the time. And probable cause is a standard, not a rule. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). When facts support a “fair probability” that a suspect has committed a crime, probable cause to arrest exists. 462 U.S. at 238, 103 S.Ct. 2317. The Court described a “commonsense, practical” inquiry, 462 U.S. at 230,103 S.Ct. 2317, into the question whether the circumstances “warrant suspicion” justifying detention. 462 U.S. at 235, 103 S.Ct. 2317. The district judge thought that this standard had been met; we do too.
There was no dispute in the district court about what Eberle and Forberg knew or reasonably believed at the time. Plaintiffs contend that a jury should make an independent assessment of probable cause, no matter how things appeared to the officers at the scene. They observe that the witness who heard shots and saw plaintiffs run away did not tell the officers that plaintiffs had fired guns; perhaps a jury would treat this as reducing the likelihood that any of the plaintiffs shot Chandler (or assisted the shooter). Similarly, plaintiffs contend, a jury might attach significance to the fact that Chandler was *676 very drunk; this might make it more likely that he shot himself accidentally. Plaintiffs’ position is wrong for at least two reasons.
First, it proceeds as if the police had to use the rules for summary judgment and draw inferences in favor of the suspects. They don’t. See, e.g., Gramenos v. Jewel Companies, Inc., 797 F.2d 432 (7th Cir.1986); Askew v. Chicago, 440 F.3d 894 (7th Cir.2006). The summary-judgment rules affect what knowledge the district court can impute to the police, not whether a given set of facts supplies probable cause. And in this suit there is no dispute about what the police knew (or inferred, albeit incorrectly, from the condition of Chandler’s head). Chandler’s head was a mess; a single bullet fired from close range (as this one was) can cause extensive damage. Plaintiffs do not deny that it was reasonable for the detectives to have thought that Chandler had been hit with multiple rounds. And the police did not know how much alcohol was in Chandler’s blood; he was dead when they arrived, and his blood alcohol was tested only after plaintiffs were in custody. Whether the known facts add up to probable cause is a legal question for the judge, not a subject on which jurors are entitled to form their own opinions.
Second, the contention that, if the witness did not relate seeing any of the group fire a gun, then they cannot have done so, treats memory as if it were a movie made by a well-positioned camera. Yet things happen without being seen. A witness may not have a clear view of an entire alley. The focus of vision is fairly small; events in the periphery regularly are missed. And memory often does not record unexpected or unusual events. See Christopher Chabris & Daniel Simons, The Invisible Gorilla: How Our Intuitions Deceive Us (2010) (describing findings of psychological research). Police are entitled to draw on eyewitness descriptions without being required to assume that witnesses got every detail right, or that every omission from a description must establish that the omitted fact did not occur.
Now we take up the three claims advanced by Bridewell alone, starting with her contention that the police waited too long to present her to a court. County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), holds that the fourth amendment allows no more than 48 hours for the police to get a magistrate’s approval of a suspect’s continued detention. The delay for Bridewell was 63 hours, and she maintains that this entitles her to damages. The district judge held otherwise, ruling that because Bridewell is a member of the class in Dunn v. Chicago, 231 F.R.D. 367 (N.D.Ill.2005), which dealt (in a settlement) with Chicago’s repeated violation of Riverside’s rule, her exclusive remedy comes through that litigation.
We need not decide whether Bridewell has adequately demonstrated that her claim differs from the one resolved in Dunn, because she cannot show injury. The state judge concluded that probable cause existed to find that she had shot Chandler and ordered her to be held—and also revoked her bail on the drug-distribution charge. The Supreme Court observed in Riverside that the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on “incorrect or unfounded suspicion” is short-lived, 500 U.S. at 52, 111 S.Ct. 1661, and that persons properly arrested but entitled to bail can be released promptly. Events showed that Bridewell had been arrested properly and was not entitled to release on bail. If the police had complied with Riverside, she would have learned these things a little sooner but would have remained in *677 jail. This means that she was not injured by the delay.
What’s more, Bridewell cannot receive damages for time spent in custody on a valid sentence. See Ramos v. Chicago, 716 F.3d 1013, 1019-20 (7th Cir.2013). She received credit, against her sentence for possessing cocaine, for every hour she spent in custody following her arrest on the charge of murder. Defendants pointed this out in their appellate brief, and Bride-well’s reply brief ignores the subject. The reply brief does maintain that Manuel and Rhodes are entitled to damages for unreasonably long detention short of 48 hours, but the opening brief does not make any such contention—and it does not appear to have been advanced in the district court either, where only Bridewell sought damages for excessive delay.
Bridewell next contends that she is a victim of malicious prosecution. Like the district judge, we put to one side the question whether Eberle, Forberg, or the City of Chicago can be amerced on account of charges filed by the State’s Attorney of Cook County, an official of a different public body. See Ramos, 716 F.3d at 1019-20. The tort of malicious prosecution under Illinois law includes among its elements a demonstration that the assertedly wrongful prosecution terminated in the plaintiffs favor in a manner implying innocence. See, e.g., Swick v. Liautaud, 169 Ill.2d 504, 512-13, 215 Ill. Dec. 98, 662 N.E.2d 1238 (1996). A prosecutor’s dismissal of a criminal charge may imply innocence, but Swick added that it does not do so when it is part of a plea bargain. Bridewell struck a plea bargain, and the district judge concluded that this forecloses a malicious-prosecution claim.
Bridewell contends that although dismissal as part of a bargain usually fails to imply innocence, it did so in her situation because the prosecutor was certain to abandon the murder charge eventually no matter what happened to the drug charge. She tells us that the evidence was weak— that Rhodes and Watkins implicated her only because of improper interrogation, that her hands tested negative for gunshot residue (though the test was not performed until after she had washed her hands), that her DNA and fingerprints were not found on the gun, and that Chandler’s death from one shot fired at close range is best understood as suicide rather than murder. Yet the medical examiner classified the death as homicide initially and after a reexamination, and Bridewell was in position to have shot Chandler from less than a foot away and dropped the gun into the car. Rhodes and Watkins had no reason to make false charges against Bridewell; Rhodes is Bridewell’s sister, and there is no suggestion of bad blood between them.
We therefore cannot say that the murder charge was doomed from the outset—and, more to the point, we could not find any Illinois case holding that it is proper to look past the form of a plea bargain to inquire what would have happened had a compromise not been reached. Federal courts asked to rule on claims arising under state law must take it as it exists. State courts have the prerogative of innovating on common-law subjects, but federal courts do not. Bridewell could have filed this suit in state court but chose a federal forum and did not ask the district judge to relinquish supplemental jurisdiction, 28 U.S.C. § 1367(c)(3), after resolving her two claims under federal law.
Bridewell asserts that a memo in the prosecutor’s files shows that dismissal of the murder charge was inevitable because the evidence was weak. The Assistant State’s Attorney who wrote the memo concluded that the failure of police to obtain DNA from the gun, and to test Bridewell’s hands for residue before she washed them, *678 undermined the strength of the evidence. This assistant also was skeptical of Rhodes’s accusation against Bridewell, observing that the video of the interrogation showed that the officer had been “cross-examining” Rhodes for about four hours before she told the officer that Bridewell had shot Chandler. Yet convictions have been obtained on weaker evidence (Rhodes was an eyewitness, after all)—and, in the end, the assistant’s doubts about the strength of the prosecution’s case can not overcome the absence of any Illinois authority for the proposition that the dismissal of charges in an apparent plea bargain implies the defendant’s innocence.
As for Bridewell’s claim that Eberle and Forberg intentionally inflicted emotional distress by arresting her and recommending her prosecution for murder: the district judge dismissed this as barred by the one-year period of limitations Illinois uses for claims of this sort. 745 ILCS 10/8-101. Bridewell was arrested on September 3, 2006, and did not sue until August 29, 2008. We held in Evans v. Chicago, 434 F.3d 916, 934 (7th Cir. 2006), that a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest.
Bridewell does not contend that any state court has understood the accrual time differently—Illinois applies the standard rule that a claim accrues when the victim first suffers injury and knows its cause—but insists that her claim accrued anew every day the detectives did not tell the prosecutors to dismiss the indictment because the statements by Rhodes and Watkins were unreliable and DNA evidence was unavailable. If Bridewell is right, however, then Evans must be wrong. The tort of intentional infliction of emotional distress either is a continuing wrong (as she contends) or is not (as Evans held). The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either. See, e.g., Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110-15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). See also Turley v. Rednour, 729 F.3d 645, 654-55, No. 11-1491, 2013 WL 3336713 (7th Cir. July 3, 2013), slip op. 16-18 (concurring opinion distinguishing three different senses of “continuing violation”).
Although the detectives did not submit the gun for full forensic testing until too late to collect DNA, and became reluctant to cooperate with the prosecutors once they were defendants in this suit (which, recall, Bridewell filed more than a year before the murder charge was dismissed), it is hard to see how these events could constitute anew malicious prosecution, when the prosecution was already under way. And some of the events to which Bridewell points, such as the lack of proper and prompt forensic testing, occurred more than a year before she filed suit.
Even if we were to suppose that a new claim could in principle be based on events after the initial injury, Bridewell’s claim would fail because she does not contend that the detectives’ ongoing failure to alert the prosecutor to the potential shortcomings in the evidence was motivated by a freshly formed intention to cause emotional distress. A truly new claim arising from inaction requires proof of each element of the tort on each day the supposedly new claim arises. Bridewell wants to treat the (allegedly) bad intent with which the prosecution began as extending to all later inaction. Yet if the initial intent *679 carries forward, so does the initial date of the claim’s accrual.
Affirmed.