In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-1009

TINA M. EWELL,

*Plaintiff-Appellant,*

*v.*

ERIC TONEY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cv-00931-PP — **Pamela Pepper**, *Judge.*

ARGUED DECEMBER 2, 2016 — DECIDED APRIL 10, 2017

Before WOOD, *Chief Judge*, and EASTERBROOK and
WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. Tina Ewell was a close friend and con-
fidante of her sister, Eve Nance. So close, in fact, that when
Nance shot and killed her husband, Ewell helped Nance dis-
pose of his body. For this, a Wisconsin court convicted Ewell
of a number of felony and misdemeanor charges in October
2016. But she is not asking us to second-guess those convic-

tions. Instead, she is complaining about an aspect of the criminal investigation—namely, her initial arrest and detention immediately after the murder. During the period between her release from that detention and her indictment in the criminal case, she filed a civil rights action complaining that the detention was not supported by probable cause but was instead for the impermissible goal of building a case against her. Resolving the case before the state criminal proceeding began, the district court dismissed her suit, and this appeal followed. Because we conclude that Ewell is not entitled to damages on most of her claims, and that the defendants are entitled to qualified immunity on the rest, we affirm.

**I**

Eve Nance shot and killed her husband, Timothy Nance, as he stood in the shower of their Fond du Lac, Wisconsin, home on November 1, 2013. Four days later, Nance reported him missing. Two detectives from the Fond du Lac Police Department, William Ledger and Matt Bobo ("the detectives"), were assigned to investigate. What follows is their account of their actions. They began by interviewing Timothy's family, his new girlfriend, and various friends, including Ewell. Some of those friends told them about the Nance couple's fraught history of threats and violence, including recent discord over Timothy's new girlfriend and his purported plan to divorce Nance. The detectives also said that a witness had noticed that the shower curtain, liner, and hooks in the Nance bathroom had been replaced after Timothy disappeared. Nance and her daughter confirmed this detail, which one of the detectives had observed independently.

The detectives also reviewed surveillance tapes from a local store. The tapes showed Ewell and Nance buying new

shower curtain liners and hooks the night Timothy went missing. On November 20, the day after they reviewed the surveillance tape, the detectives and crime lab technicians executed a search warrant at the Nance house and seized "biological specimens," a "projectile" from the bathtub pipes, clothing, and other evidence. That same day, the detectives spoke to Ewell again. When they asked her to accompany them to the police station for further questioning, she refused. They did not take "no" for an answer: they arrested Ewell and transported her to the Fond du Lac police station sometime between 2 and 4 p.m.—approximately an hour after arresting Eve Nance.

Ewell asserted her right to remain silent, requested counsel, and was moved to the Fond du Lac County Jail around 3:45 or 4 p.m. that same day. She spent the next two days in custody. At 4:02 p.m. on November 22, Detective Ledger signed a probable cause statement in front of a Fond du Lac County judge. In that statement, Ledger reported that he believed that Timothy Nance was murdered, that the shower curtain and liner had been used to conceal evidence of Timothy's death, and that Nance and Ewell had removed Timothy's body and concealed it in an unknown location. At 4:15 p.m., the judge, relying exclusively on Ledger's statement and accompanying affidavit, determined that probable cause existed to detain Ewell and denied Ewell bond pending a court appearance. Ewell's public defender filed a habeas corpus petition on her behalf with the Fond du Lac County Circuit Court on November 26. The following afternoon, the same judge who had found probable cause on November 22 conducted a hearing on the habeas corpus petition. At that hearing, Ewell's public defender contended that the November 22

probable cause determination had occurred after the expiration of the 48-hour period considered presumptively reasonable under *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and that there had not been an initial appearance or the filing of a complaint within a reasonable time of arrest.

The county judge agreed that the *Riverside* determination was outside the 48-hour window, and so the burden shifted to the state to show extraordinary circumstances. The state, the judge decided, satisfied that burden, given the activity related to the case on the court calendar. The judge stated that although Detective Ledger had contacted him earlier to sign the statement, he (the judge) could not have diligently reviewed and signed it any earlier than he did. The judge then reiterated his conclusion that probable cause existed to detain Ewell. Immediately thereafter, the court held a bond hearing and set a $50,000 cash bond for Ewell. The court was closed from November 28 through December 1 for the Thanksgiving holiday and weekend. On December 2, 2013, the Fond du Lac County District Attorney, Eric Toney, requested Ewell's release, and the state court ordered her release that same day. At that point, the state had filed no charges against her; in all, she had spent 12 days in custody.

On August 4, 2014, Ewell filed a complaint in federal court under 42 U.S.C. § 1983, alleging that the detectives and DA Toney had arrested and held her without probable cause and had conspired to deprive her of her constitutional rights by false arrest and unlawful detention. The district court granted the defendants' motions to dismiss on January 4, 2016, finding that some of Ewell's allegations against DA Toney failed to state a claim and that he was entitled to qualified immunity on the remaining claims; that the detectives were entitled to

qualified immunity because probable cause existed to arrest Ewell; and that, on the understanding that her complaint alleged a conspiracy to interfere with her civil rights in a manner prohibited by 42 U.S.C. § 1985, Ewell failed to state a claim because she had not named any private actors. Ewell filed a timely notice of appeal from the court's final judgment on January 8, 2016.

While her appeal was pending before our court, the Fond du Lac District Attorney filed charges against Ewell on April 12, 2016. See *Wisconsin v. Tina M. Ewell*, Fond du Lac County Case No. 2016-CF-231. She was accused of committing four crimes: (1) felony hiding a corpse, Wis. Stat. Ann. § 940.11(2); (2) felony harboring or aiding a felony, Wis. Stat. Ann. § 946.47(1)(b); (3) misdemeanor resisting or obstructing an officer, Wis. Stat. Ann. § 946.41(1); and (4) misdemeanor failure to report a death under unusual or suspicious circumstances, Wis. Stat. Ann. § 979.01(1)(a). After those charges were filed, the detectives moved this court to stay the appellate proceedings in her civil rights case, arguing that *Younger* abstention was appropriate. We denied that motion and invited the detectives to address *Younger* in their responsive brief. On October 28, 2016, prior to oral arguments before our court, a state jury found Ewell guilty of the first three counts. (The prosecutor had dismissed the fourth count a few days earlier.) The detectives again asked us to dismiss the proceedings, this time on the basis of both *Younger* abstention and the bar established in *Heck v. Humphrey*, 512 U.S. 477 (1994). We ordered this motion to be taken with the case for resolution after oral argument. On December 8, 2016—six days after we heard oral argument on her appeal—the state court sentenced Ewell to two years' imprisonment.

## II

Simultaneous state and federal court cases relating to the same events pose important questions relating to federal-state comity. These are not jurisdictional questions, but the defendants have properly raised them, and they should be resolved before we push on to the merits.

### A

The *Younger* abstention doctrine, which is rooted in traditional principles of equity, comity, and federalism, requires federal courts to refrain from exercising their jurisdiction when relief may interfere with certain state proceedings. *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010) (citing *Younger v. Harris*, 401 U.S. 37, 53–54 (1971)). Situations in which *Younger* abstention is appropriate include those in which there is an ongoing state proceeding that is judicial in nature, involves important state interests, provides the plaintiff an adequate opportunity to raise the federal claims, and no exceptional circumstances exist. *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007). In addition, the constitutional issues raised must be capable of being raised in the state proceedings, including in the state appellate process. *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995).

If Ewell's federal case were in its infancy in the federal courts, the district court might have had good reason to stay its proceedings while the state criminal case was underway. Ewell could have contested probable cause in the state courts. But the timeline of the two cases did not lend itself to *Younger* abstention, which is proper only when state court proceedings are initiated "before any proceedings of substance on the

merits have taken place in the federal court … ." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). This does not call for a simple check of the calendar to see which case was filed first. A federal court should abstain when a state criminal complaint is filed while the federal litigation is an "embryonic stage" and no contested matter has been decided. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975). In all other cases, "federal courts must normally fulfill their duty to adjudicate federal questions properly brought before them." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984). Once a case has progressed beyond the embryonic stage, "considerations of economy, equity, and federalism counsel against *Younger* abstention … ." *Id.*

Here, the district court considered the issues, entertained numerous motions, and finally resolved the federal case four months before the state's initiation of criminal proceedings against Ewell. In those circumstances, nothing called for abstention at the district court level, nor should we take that step at the appellate level. Instead, we will heed our "virtually unflagging obligation … to exercise the jurisdiction given" to us, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and proceed.

B

There is, however, another preliminary obstacle to some of Ewell's section 1983 claims now that she has been convicted and sentenced by a state court—a court whose proceedings are relevant to this matter and the proper subject of judicial notice. *Opoka v. I.N.S.*, 94 F.3d 392, 394–95 (7th Cir. 1996). At her sentencing, Ewell received credit for the 12 days she spent in custody following her initial arrest—the same time for which she now contends she was unlawfully detained. See *Wisconsin v. Ewell*, No. 16-CF-231, Sentencing Tr., Dec. 8, 2016.

The problem she faces is this: a section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence. *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013); *Ramos v. City of Chicago*, 716 F.3d 1013, 1020 (7th Cir. 2013).

After reviewing Ewell's complaint and the 2016 state criminal proceedings, we conclude that Ewell is not entitled to seek damages related to her detention and therefore to this extent has no injury that a favorable decision by a federal court may redress. Without a redressable injury, Ewell lacks Article III standing to press this claim. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–62 (1992).

We note in passing that the Supreme Court recently held in *Manuel v. City of Joliet*, No. 14-9496, 2017 WL 1050976 (U.S. Mar. 21, 2017), that the Fourth Amendment continues to govern at least some claims for unlawful pretrial detention even after the legal process has begun through a judicial probable-cause determination or comparable procedure. The rule in this circuit had been that claims (such as Ewell's) for unlawful detention could be brought only under the Due Process Clause once legal process had begun. See, *e.g.*, *Llovet v. City of Chicago*, 761 F.3d 759, 763 (7th Cir. 2014). Nothing in *Manuel*, however, affects the question now before us, which is whether Ewell is entitled to damages for time spent in custody that was fully credited to her state sentence.

This means that Ewell's conspiracy allegations are out as well. She asserts almost in passing at the end of her appellate brief that the district court misread her allegation that the detectives and DA Toney had engaged in a conspiracy to hold her without charge or probable cause as a claim under section 1985, when she was relying on section 1983. Insofar as she

notes that plaintiffs do not need to plead legal theories, she is correct. In addition, it is true that claims for alleged conspiracies between state actors are possible under section 1983, though as we have observed, they add nothing but needless complexity. See *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009); see also *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). But Ewell fails to develop this argument on appeal, and we have repeatedly noted that perfunctory and undeveloped arguments do not preserve a claim for our appellate review. See, *e.g., Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Even if she squeaks past forfeiture, she cannot succeed. In any case, there must be an underlying constitutional injury or the conspiracy claim fails. Because Ewell cannot maintain a claim for her alleged unlawful detention—the only possible injury for this part of the case—her conspiracy claim also fails.

## C

Ewell's claim of unreasonable delay in obtaining a prompt judicial determination of probable cause under *Riverside v. McLaughlin*, 500 U.S. 44 (1991), meets the same fate. In *Bridewell v. Eberle*, we determined that a litigant in very similar circumstances, who was held for 63 hours after her arrest before a judicial determination of probable cause, could not demonstrate that she was injured by the presumptively unreasonable delay of more than 48 hours. 730 F.3d at 676–77. The critical fact was that the judge ultimately found probable cause and denied bail. The plaintiff thus would not have been entitled to release any sooner. *Id.* Moreover, because her time in custody was later credited to a criminal sentence on another charge, she could not receive damages for the time she spent

in custody after her arrest. *Id.* at 677. So too here. The state court judge found probable cause and denied bond pending a further hearing in his November 22, 2013 determination. Had the judicial determination occurred earlier, the outcome would have been the same: Ewell would not have been released at that point.

Even if Ewell could show at least nominal damages from the delay, our review of the state habeas corpus proceedings convinces us that the detectives would not be the correct parties to hold liable for any such damages. The judge indicated that although Detective Ledger had contacted him to review and sign the probable cause statement within the 48-hour presumptive period, the judge turned him away and indicated that he could not possibly have made the determination any sooner than he did. This suggests that the delay of longer than 48 hours was not a result of the detectives' actions. And Ewell's amended complaint does not assert that either the county or the police department had any policy or practice that caused excessive delays. On these facts, she has not stated a *Riverside* claim against the defendants she names.

### III

That leaves Ewell's claim for false arrest. While we are skeptical that she could show any injury from the arrest, her case was dismissed at the pleading stage, and so she never had the opportunity to develop a record on this point. But giving Ewell the benefit of the doubt and assuming that she may have suffered damages related to the arrest itself—perhaps emotional injury or nominal damages independent of the time already credited to her criminal sentence—we must consider whether her suit against the detectives is nevertheless barred by qualified immunity.

Our review of a district court's ruling on qualified immunity in response to a Rule 12(b)(6) motion is *de novo*; we consider the facts, including all reasonable inferences from them, in the light most favorable to the nonmoving party. *Chasensky v. Walker*, 740 F.3d 1088, 1093 (7th Cir. 2014). But we need not accept any legal assertions as true when we review a dismissal under Rule 12(b)(6). *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). We may affirm a district court's dismissal on any ground contained in the record. *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). In other words, qualified immunity "shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). To defeat the qualified immunity defense, a plaintiff must show: (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). These questions can be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015).

Probable cause is an absolute defense to claims of wrongful or false arrest under the Fourth Amendment in section

1983 suits. *Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013). In other words, if an officer has probable cause to arrest a suspect, the arrest was not false. Probable cause exists at the time of an arrest if "the facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, in believing … that the suspect has committed, is committing, or is about to commit an offense." *Id*. (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). Probable cause is gauged from the vantage point of a reasonable officer facing the same situation. *Id*.

Ewell's complaint said little about the detectives' alleged lack of probable cause. She pleaded only that "[n]othing [she] said or did during the … police questioning could have caused a reasonable law enforcement official to believe that [she] had engaged in criminal wrongdoing," and that they did not have probable cause when they arrested her. But she also referred to the probable cause affidavit prepared by Ledger in her complaint. We may take notice of that complaint. See *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Ewell contends that it contained "several material false statements and material omissions." But she has not pointed to any specific errors or misstatements, and in district court she asserted that her claim was not that the detectives had lied or committed misconduct. And when we asked at oral argument whether she was contending that the detectives lied in their affidavit, Ewell refrained from going that far. Instead, she repeated that nothing in the affidavit established probable cause. We are therefore free to rely on this affidavit to show what the detectives at least believed to be true at the time, without needing to make a finding about the truth of the underlying assertions.

This permits us to accept for present purposes that at the time Ewell was arrested, the detectives knew or believed: that she claimed she had not seen or talked to Timothy Nance since Friday, November 1, 2013; that she admitted having had the keys to the Nance house over the following weekend, including having been in the house on the following Sunday, and having spoken to her sister; that video surveillance showed Ewell and Nance entering a local store and purchasing shower curtain liners and hooks the Friday night that Timothy went missing; that witnesses indicated that the curtains were replaced after Timothy went missing; and that the search at the Nance residence had turned up a "projectile" from the bathtub plumbing pipes. This all plausibly supports the detectives' suspicion that Ewell had helped to hide a body or conceal a homicide.

None of this, we assume, proves Ewell's guilt. But the question before us is a different one: whether a reasonable officer would have been justified in *believing* that he had probable cause to arrest Ewell. Here, it would not have been plain to a reasonable officer that arresting and detaining Ewell under those circumstances would have been *unlawful* under the Fourth Amendment, and this is all that the qualified immunity inquiry requires. Although qualified immunity is sometimes a factual question better reserved for summary judgment, here the pleadings and items subject to judicial notice support immunity for the detectives.

We note for the sake of completeness that we need not reach the issue of absolute or qualified immunity for DA Toney because Ewell's allegations against him all stem from conduct subsequent to her arrest. She alleges that he learned of her arrest after it occurred, and that he was aware

while she was detained that probable cause was lacking. But even assuming this were so, and that she could establish that he was at least partially responsible for her continued detention, the only claim she would have had against him is for unlawful detention. And, as we already have concluded, she cannot maintain that claim because she has been credited for the time served.

Finally, the appellees contended that some of Ewell's claims would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which holds that a prisoner's claims for damages that would implicate the validity of her underlying conviction or sentence are not cognizable under section 1983 until she receives favorable collateral relief, such as through the issuance of a writ of habeas corpus. The *Heck* bar is not jurisdictional, however, and we therefore are not concerned that it would affect our power to hear this case. Because we may affirm a dismissal on any ground contained in the record, *Brooks*, 578 F.3d at 578, we decline to reach the *Heck* issue.

We therefore AFFIRM the judgment of the district court.