NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 21, 2017[*]
Decided December 21, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-3545

| | |
|---|---|
| EARNEST D. BEAMON JR., | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 14-CV-136-JPS |
| MICHAEL A. DITTMANN, et al., | |
| *Defendants-Appellees.* | J.P. Stadtmueller, |
| | *Judge.* |

## O R D E R

Earnest Beamon, an inmate in Wisconsin, filed this suit under 42 U.S.C. § 1983, claiming that prison officials disciplined him because of a grievance that he filed. The district court granted summary judgment for the defendants, and Beamon has now appealed. We conclude that a reasonable jury could find that one defendant violated

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

Beamon's right under the First Amendment to pursue a grievance. We therefore vacate the judgment and remand for further proceedings against that defendant only.

Most of the facts underlying this appeal are undisputed. They arise from interactions that Beamon had at Wisconsin's Redgranite Correctional Institution with Jason Wilke, a prison official. (We briefly discuss the other defendants at the end of this order.) The main factual dispute concerns why Wilke wrote a conduct report against Beamon: Wilke says that he wrote it because he wanted to punish Beamon for writing a letter supporting a prohibited group, while Beamon insists that Wilke issued the conduct report in retaliation for a grievance that Beamon had filed about Wilke.

As the facility's Security Threat Group Coordinator, Wilke monitors prison gangs and groups that threaten security. One such group is the "Five Percent Nation" (a reference to blessed black men). The Department of Corrections considers it a hate group. The Five Percent Nation (also known as the Nation of Gods and Earths) was founded after its leader, "Father Allah," broke away from the Nation of Islam. Some of Father Allah's teachings are based on something called the "120 lessons." The Department bans prisoners from possessing any materials about the Five Percent Nation for three reasons. First, "Five Percenters" promote black racial supremacy by teaching, among other things, that white people are evil and black men are divine. Second, they use codes—known as "Supreme Mathematics" and the "Supreme Alphabet"—that obscure from untrained staff problematic content. And third, in other states some prisoners who identified as Five Percenters engaged in violence and unlawful activity years ago.

Wilke and Beamon clashed four times in 2013. The first time was in April, when prison staff searched Beamon's cell and discovered written materials related to Supreme Mathematics. (The parties offer no specifics about their content.) Wilke met with Beamon, explained that Five Percenter materials are contraband, but did not issue a conduct report. About three weeks later, Beamon was found a second time to possess unspecified Five Percenter materials. Again Wilke counseled him but did not issue a conduct report.

The third clash was in June, when prison staff intercepted a letter that Beamon had written to another inmate. In this letter Beamon mentioned the "120 lessons," identified the other inmate as "God," and signed the letter "Born Prophet Allah." Wilke construed these as references to the Five Percenter ideology. Another search of Beamon's cell revealed documents that, in Wilke's view, related to the Five Percent

Nation "or groups with very similar ideology." Wilke charged Beamon with violating rules against group resistance and petitions, using false names and titles, employing unauthorized forms of communication, and disobeying orders. A disciplinary officer found Beamon guilty of the first two charges only. Beamon received 90 days of disciplinary separation.

A fourth interaction the following month precipitated this lawsuit. Beamon wrote a letter to his niece, and Wilkes intercepted it. Here is a representative excerpt:

> Hey, lil bad ass. I got you[r] letter yesterday. I'm glad you [are] doing alright. That really brings a smile to my face . … I'm glad you been going to the gym wit[h] your granny, cause you got to take care of yourself and your body that's very important. Where do you go to vacation Bible school at? That's real nice it gives you something to do, something positive. I'm real proud of you. Keep up the good work . … If you don't remember nothing else remember that your uncle loves you dearly . …

The letter also includes a chart that translates into English some Chinese words for black people. Beamon signed the letter "Uncle Junior B. A.K.A. The Prophet," though he wrote his full name and inmate number on the envelope. When he tried to send the letter, Wilke returned it to him because Beamon had enclosed stamps. Inmates may not mail stamps outside the prison. Wilke did not issue Beamon a conduct report, either for the contents of the letter or for the stamps.

The next day Beamon filed a grievance against Wilke for not permitting him to mail stamps to his niece. He also tried to resend the letter. He left out the stamps but added a postscript to his niece. The postscript criticizes the prison's refusal to allow him to mail her stamps, proposes litigation over it, and advises good behavior for her:

> [T]ell your papa to get in touch with the federal authorities and inform them of the violations of my first amendment and 14th amendment rights and my privacy to write family members . … Tell him the dumb capt here misinterpreted everything from his own unintelligent understanding. Just let him read this part and you better stay out of trouble. I was trying to send you some more stamps but these dumb people all of sudden say I can't . … Also lil queen you better be staying away from the gang bull . … Tell your papa these got to be the dumbest people I ever came across. They ain't even that dumb back home.

> Everybody but these idiots know I haven't dealt with a dumb ass gang since Keana been in the world 18 years. Tell my Mother Earth to make sure daddy get on it and I'm cool. Tell her a thinking man remains unswayed at all times. Tell her she know what she raise me to be no matter what a black or white person has to say . … I don't have the energy to hate. We wasn't raised that way.

This time Wilke objected to the letter and issued a conduct report. Beamon swears that Wilke told him he let Beamon "slide the first time" he tried to mail the letter, but once Wilke learned that Beamon had written a grievance about him Wilke "figured [he]'d write [Beamon] up since [Beamon] wrote [Wilke] up." (Wilke denies knowing about Beamon's grievance, but at this juncture we must accept Beamon's version.) Wilke asserted that the letter attempted to spread Five Percenter ideology. He objected to two features that were in the original letter: the translations of terms for black people and the signature "Uncle Junior B. A.K.A. The Prophet." He also objected that the postscript referred to Beamon's mother as "Mother Earth." Wilke charged Beamon with violating rules against group resistance and petitions, using false names and titles, disrespect, and disobeying orders. A disciplinary officer found Beamon guilty of all rule violations except for disobeying orders. Beamon was punished with six more months in disciplinary separation.

Invoking 42 U.S.C. § 1983, Beamon sued Wilke and various prison officials who had participated in the disciplinary process. He asserted that the defendants had violated the First Amendment by burdening his religious practice and retaliating against him for filing a grievance. The district court concluded that a reasonable jury could not find in Beamon's favor and entered summary judgment for the defendants.

In this court Beamon focuses on the retaliation claim against Wilke. To survive summary judgment, Beamon must produce evidence that (1) he engaged in protected First Amendment activity, (2) he suffered a deprivation sufficient to deter future First Amendment activity, and (3) the protected activity was at least a motivating factor for the deprivation. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Greene v. Doruff*, 660 F.3d 975, 979–80 (7th Cir. 2011). The parties assume that Beamon's grievance was protected and that his punishment would deter protected activity. They focus on the last prong—whether Beamon's grievance motivated the conduct report. We do the same.

Construing the evidence in the light most favorable to Beamon, a reasonable jury could conclude that Wilke wrote the second conduct report because Beamon filed a grievance about him. According to Beamon's testimony, Wilke essentially admitted his retaliatory motive for writing the conduct report. This admission by itself is enough for a trial, but even without it a jury could infer retaliatory animus from the chronology of events that the evidence supports. See *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). Wilke opened the letter, examined it, and found nothing objectionable about it other than the stamps. Only *after* Beamon had filed his grievance against Wilke for confiscating the stamps and only *after* Beamon had stated in his postscript his plan to litigate that issue did Wilke consider the *same* contents objectionable.

This same evidence would permit a reasonable jury to conclude that if Wilke had no retaliatory motive, he would *not* have written the conduct report and therefore Beamon would not have been punished. Because Beamon offered evidence that Wilke had a retaliatory motive for writing the conduct report, the burden shifted to Wilke to show that he would have written the conduct report anyway, without the forbidden motive. See *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013). Wilke swears that the reason he issued the conduct report after Beamon tried to re-mail the letter was that he only then noticed the letter's objectionable content. But a jury would not be bound to believe this assertion. A jury could instead credit Beamon's testimony that Wilke admitted his actions were driven by retaliatory animus—that Wilke "figured [he]'d write [Beamon] up since [Beamon] wrote [Wilke] up."

We can quickly dispatch the two remaining issues. First Beamon also argues on appeal that a reasonable jury could find that Wilke issued the conduct report because Beamon identifies as a Black Muslim. But Beamon produced no admissible evidence to support his contention that "Wilke has a personal prejudice against Black Muslims" and "has explicitly expressed those feelings." A jury would have to speculate about this claim, and a reasonable jury does not base its decision on speculation. See *Muhammad v. Caterpillar*, 767 F.3d 694, 700 (7th Cir. 2014). Second, as for the remaining defendants, Beamon forfeited any appellate challenge to their dismissal by failing to articulate any argument for our review. See FED. R. APP. P. 28(a)(8)(A); *Ewell v. Toney*, 853 F.3d 911, 918 (7th Cir. 2017). In any event, Beamon principally faults these defendants for not preventing Wilke's violation of Beamon's rights, yet government officials are liable for their own misconduct only. See *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

We close with an observation about this case on remand. As a prisoner, Beamon may not recover compensatory damages unless he proves that he suffered a physical

injury, see 42 U.S.C. § 1997e(e). But if the trier of fact believes his assertions, he may be awarded nominal damages, and if the trier finds that Wilke's conduct was willful and wanton, Beamon may recover punitive damages. See *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011).

Accordingly, we **VACATE** the judgment and **REMAND** for further proceedings on Beamon's retaliation claim against Wilke. In all other respects we **AFFIRM**.