In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 22-1425

ANTHONY LEROY PATRICK,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.,*

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-05414 — **Virginia M. Kendall**, *Judge.*

———————

ARGUED MAY 18, 2023 — DECIDED AUGUST 31, 2023

———————

Before WOOD, LEE, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* Anthony Patrick was arrested in June 2013 for various weapons-related charges and later charged with numerous counts of attempted murder. After pleading guilty to one count of aggravated discharge of a weapon and receiving a sentence of time served, Patrick brought this civil action pursuant to 42 U.S.C. § 1983. He alleged that the City of Chicago and twenty-three Chicago police officers violated his constitutional rights under the Fourth and Fourteenth

Amendments by conspiring to conduct an unlawful arrest, execute a warrantless search of his home, and detain him unlawfully. Patrick also asserted various state law claims including conspiracy, respondeat superior liability, and indemnification. The defendants moved to dismiss for failure to state a claim. The district court granted the motion, dismissing all of Patrick's federal claims and finding the state law claims either time-barred or blocked as derivative actions of Patrick's unsuccessful constitutional claims. Patrick appeals.[1] We affirm in part, reverse in part, and remand for further proceedings.

## I

### A

In reviewing the dismissal of Patrick's complaints, we must accept his allegations as true and view them in the light most favorable to him. *See Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 819 (7th Cir. 2022). On June 15, 2013, Patrick was finishing up some work on a house near the home of an on-and-off girlfriend, when gang affiliates of the girlfriend's current boyfriend—Armond Freeman—began shooting at him. Patrick was able to escape in his truck and drive to his mother's house, where he lived. Also at the home at the time were Patrick's current girlfriend and his children.

---

[1] Patrick also brought Section 1983 claims for excessive force and violations of due process, various *Monell* claims, and state law claims for malicious prosecution and intentional infliction of emotional distress. He does not pursue these claims on appeal, meaning any arguments relating to them are waived. *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

After realizing that he had left his truck unlocked with his work equipment, Patrick went outside to secure it. Upon leaving the residence, Patrick observed Freeman throw a brick through the truck's windshield. Immediately, Freeman and another Gangster Disciple opened fire on Patrick. Patrick ran back inside, grabbed a gun loaded with pellet bullets, and fired two shots from the front door of his home. The bullets struck Freeman in the buttocks and behind the ear. Freeman and the other gang member stopped advancing toward the house and ran away.

Later that afternoon, Chicago police officers arrived at Patrick's home. Upon hearing banging on the front door, Patrick looked outside and saw three Chicago police officers standing on the front porch and other officers forming a perimeter around the front of the house. Officers instructed Patrick to open the door, explaining that they simply wanted to talk. Patrick complied with the officers' request, but, upon entering the home, law enforcement immediately shoved Patrick to the ground inside the entryway and handcuffed him. While pinning Patrick to the ground, the defendants demanded that Patrick tell them where the gun was or they were going to tear Patrick's mother's home apart. At the time of the officers' entry into the home, they had not obtained either a search warrant or an arrest warrant.

Fearing for his and his family's safety, and also feeling as if he had no other choice but to do as the officers demanded, Patrick informed the officers that there was a gun in a safe in the basement of the home. In response, two officers pulled Patrick, still handcuffed, off the ground, and told him to take them to the safe. Once downstairs, the officers told the children to go upstairs; the officers then shut the door to the

basement, leaving them and a still-handcuffed Patrick inside
the basement alone. Patrick was instructed to open the safe.
After he did so, the officers seized ammunition and a number
of guns. Patrick was arrested, and his mother was instructed
by one of the officers to sign a written consent form so that
she could have the seized property returned to her. Patrick's
mother complied.

While awaiting a probable cause hearing, Patrick was
charged with various weapons-related charges. It is unclear
from the complaint when the probable cause hearing oc-
curred, but it appears from the state court docket that follow-
ing this hearing, Patrick was eventually charged with addi-
tional crimes, including attempted murder.[2] Patrick was de-
tained for over five years awaiting trial. On the eve of trial,
Patrick was presented with a plea deal in which he could
plead guilty to one count of aggravated discharge of a
weapon and all other charges would be dismissed in ex-
change. Patrick would also receive a sentence of time served.
Wanting to ensure his freedom, Patrick accepted the deal.

B

Following his release, Patrick sued the City of Chicago and
the officers involved alleging both constitutional and state
law violations related to his arrest, the search of his home, and
his detention. Dismissing the Second Amended Complaint,
the district court found Patrick's § 1983 unlawful search and
seizure claim collaterally estopped by the court's previous
judgment in *Patrick v. Cook County Department of Corrections,*

---

[2] We take judicial notice of the state court records. *Ewell v. Toney*, 853
F.3d 911, 917 (7th Cir. 2017) (state court proceedings are a proper subject
of judicial notice).

*et al.*, No. 13-cv-08352 (N.D. Ill. Aug. 8, 2014) ("CCDC Litigation"). The court also dismissed the remaining federal claims, finding them to be either time-barred or barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Because none of Patrick's constitutional claims survived under § 1983, the district court also dismissed Patrick's *Monell*[3] claims against the City of Chicago without prejudice. In exercising supplemental jurisdiction over Patrick's derivative state law claims of malicious prosecution, intentional infliction of emotional distress, conspiracy, respondeat superior liability, and indemnification, the district court determined that these claims also must fail because the underlying substantive causes of action were *Heck*-barred. The court gave Patrick leave to file an amended complaint.

C

In the Third Amended Complaint, Patrick raised similar claims to the Second Amended Complaint including § 1983 claims of warrantless search and seizure, unlawful pretrial detention, conspiracy, supervisor liability,[4] and other federal

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The critical question under *Monell* is whether a municipal (or corporate) policy or custom gave rise to the plaintiff's harm, or if instead the harm was the result of acts of the entity's agents. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). A municipality may be liable under § 1983 if the plaintiff can prove that the alleged unconstitutional action is caused by: (1) an express policy of the municipality, (2) "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice," or (3) a person with final policymaking authority. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022); *Glisson*, 849 F.3d at 379.

[4] In this claim, found in Count Six of the Third Amended Complaint, Patrick alleged that supervisors in the police department directly violated

and state law claims. The district court again dismissed Patrick's complaint, finding him collaterally estopped from raising the § 1983 unlawful search and seizure claim and *Heck*-barred from raising the § 1983 unlawful pretrial detention claim and due process claim. Because Patrick's federal derivative claims of conspiracy, failure to intervene, and supervisor liability did not form independent causes of action, the court also dismissed these claims. Patrick's *Monell* claims were not adequately pled, and thus were dismissed.

Exercising jurisdiction over Patrick's state law claims, the district court found the malicious prosecution, conspiracy, respondeat superior liability, and intentional infliction of emotional distress claims all *Heck*-barred. In addition, *Heck* notwithstanding, the court also found these claims barred by the statute of limitations. Without an underlying constitutional violation, the court also dismissed Patrick's derivative state law claim of indemnification. Having disposed of all claims, the district court entered final judgment in favor of the defendants. We review de novo the district court's dismissal of Patrick's complaints. *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019).

## II

Patrick raises three arguments challenging the dismissal of his Second and Third Amended Complaints. First,

---

his constitutional rights by turning a blind eye to misconduct. It is distinct from Patrick's state law claim of respondeat superior liability, found in Count Nine of the Third Amended Complaint, in which he alleged that the City of Chicago was responsible for the torts of its agents. As we discuss in more detail next, the district court dismissed these claims for different reasons.

regarding the Second Amended Complaint, Patrick contends that the district court incorrectly determined that his unlawful search and seizure claim was collaterally estopped. Second, Patrick argues that the district court erred in finding that his unlawful pretrial detention claim in his Third Amended Complaint, which included allegations of an untimely probable cause hearing and being detained for over five years unlawfully, was *Heck*-barred. Third, Patrick contends that because the district court prematurely dismissed his cognizable § 1983 claims, the district court also erred in dismissing his derivative federal and state law claims of conspiracy, failure to intervene, supervisor liability, and Illinois indemnification.

In response, the defendants concede the district court erred in dismissing Patrick's search and seizure claim. Relying on *Ramos v. City of Chicago*, however, the defendants maintain that Patrick's unlawful pretrial detention claim is foreclosed by Patrick's state court guilty plea and time-served sentence. 716 F.3d 1013, 1019 (7th Cir. 2013) (concluding that a plaintiff is unable to receive damages for time spent in custody on a valid sentence). Because the § 1983 unlawful pretrial detention claim was properly dismissed, the defendants also argue that the district court properly dismissed Patrick's derivative federal and state law claims.

## A

We first turn to Patrick's unlawful search and seizure claim, which the district court dismissed on the basis that it was collaterally estopped by the ruling in the CCDC Litigation. In that litigation, Patrick alleged that the State of Illinois and the Cook County Department of Corrections were holding him under false pretenses on a charge of attempted murder when he had acted in self-defense. *Patrick v. Cook Cnty.*

*Dep't of Corr.*, No. 13-cv-08352 (N.D. Ill. Aug. 8, 2014). In screening his complaint, the court read it as alleging false arrest but reasoned that he had pleaded himself out of court by acknowledging facts that would constitute probable cause. Thus, the court dismissed Patrick's complaint.

In the present case, however, Patrick focuses on the officers' warrantless search of his home and seizure of his property, not the alleged false arrest. Thus, Patrick contends that he is not collaterally estopped from pursuing his § 1983 unlawful search and seizure claim. We agree.

Under the doctrine of collateral estoppel, also known as issue preclusion, an issue cannot be litigated a second time between the same parties when it has already "been determined by a valid and final judgment." *Riley v. Calloway*, 882 F.3d 738, 742 (7th Cir. 2018) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). Generally, four conditions must be met for collateral estoppel to apply:

> (1) the issue sought to be precluded must be the same as that involved in the prior action, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Waagner v. United States*, 971 F.3d 647, 657 (7th Cir. 2020) (quoting *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987)). As collateral estoppel is an affirmative defense, the defendant bears the burden of raising it in the district court and

showing that its application is clear on the face of the complaint. *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016).

As the parties acknowledge, the defendants cannot demonstrate collateral estoppel because the CCDC Litigation did not resolve whether the warrantless search of Patrick's home and seizure of his property were justified. The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Seizure of a person is distinct from seizure of property. *See Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992); *United States v. Mendenhall*, 446 U.S. 544, 552–54 (1980). And even where a warrantless arrest may be proper, officers may not search and seize property inside a home without consent or exigent circumstances. *See United States v. Haldorson*, 941 F.3d 284, 290, 294 (7th Cir. 2019) (concluding that officers may make a warrantless arrest consistent with the Fourth Amendment if there is probable cause to believe that a crime has been committed, but "[w]arrantless searches and seizures within a home are considered presumptively unreasonable and a violation of the Fourth Amendment" absent "certain narrowly proscribed exceptions," such as the exigent circumstances exception); *United States v. de Soto*, 885 F.2d 354, 367–68 (7th Cir. 1989) (same); *United States v. Altman*, 797 F.2d 514, 516 (7th Cir. 1986) (noting that the justification for a warrantless arrest is distinct from whether a subsequent search of the home is permissible). None of those circumstances existed here.

Thus, even if the court in the CCDC Litigation determined there was probable cause for the alleged false arrest of Patrick, there were no facts to support the warrantless search of

Patrick's home and the seizure of his property. The district court erred by finding that Patrick's unlawful search and seizure claim was collaterally estopped. Accordingly, we conclude that Patrick's § 1983 claims premised on the lack of a search warrant were prematurely dismissed.

B

Next, Patrick maintains that the district court erred in dismissing his § 1983 unlawful pretrial detention claim, which involved allegations of an untimely probable cause hearing and a conspiracy by law enforcement of misleading and misdirecting the criminal prosecution to bolster charges against Patrick. We are unable to reach the merits of this claim.

As Patrick's counsel stated during oral argument, the five years Patrick spent in pretrial detention—the same time during which he now contends that he was unlawfully detained—was ultimately credited toward his sentence for aggravated discharge of a weapon. "[A] section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence." *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017) (citing *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013); *Ramos*, 716 F.3d at 1020).

In reviewing the state court criminal proceedings, we agree with Patrick's counsel that the five years Patrick spent in custody following his arrest was credited to his valid and lawful sentence of aggravated discharge of a weapon. Because this time was allotted to a lawful sentence, Patrick cannot "seek damages related to [his] detention and therefore to this extent has no injury that a favorable decision by a federal court may redress." *Ewell*, 853 F.3d at 917. And without a

redressable injury, Patrick does not have Article III standing to pursue this claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (noting that to establish standing a plaintiff must demonstrate: an injury in fact, a causal connection between the injury and the conduct complained of, and that redressability of the injury by a favorable decision is likely).

Turning to his second allegation under the § 1983 unlawful detention claim, Patrick seems to be alleging that police officers engaged in a conspiracy to hold him without probable cause in order to give law enforcement time to build a stronger case against him. In the Third Amended Complaint, Patrick maintains that he was acting in self-defense when he shot at Freeman. This evidence, including the overwhelming evidence that Freeman instigated the shoot-out, was allegedly ignored by the prosecution. According to Patrick, he discharged his weapon to scare Freeman away.

Under Illinois law, self-defense is an affirmative defense to aggravated discharge of a firearm.[5] *See, e.g.*, *People v. O'Neal*, 66 N.E.3d 390, 408 (Ill. Ct. App. 2016) (citation omitted). Because Patrick's self-defense allegations, if accepted as true, would necessarily imply the invalidity of his conviction, we must conclude that this claim is *Heck*-barred. *Heck*, 512 U.S. at 487 (holding that a court must dismiss a § 1983 suit if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence). Accordingly, for these reasons, Patrick's § 1983 unlawful pretrial detention claim cannot proceed.

---

[5] A person commits aggravated discharge of a firearm when he "knowingly or intentionally discharges a firearm in the direction of another person." 720 ILL. COMP. STAT. 5/24-1.2(a)(2).

C

Lastly, Patrick contends that because he has cognizable § 1983 claims, the dismissal of his six derivative claims, including § 1983 conspiracy, § 1983 failure to intervene, § 1983 supervisor liability, and Illinois state law conspiracy, respondeat superior liability, and indemnification, should be reversed.

Because the district court did not err in dismissing Patrick's § 1983 unlawful pretrial detention claim, we conclude that any derivatives of that claim were properly dismissed. On the other hand, the derivative claims relying on Patrick's § 1983 warrantless search and seizure allegations—including his § 1983 conspiracy and failure to intervene claims and the Illinois indemnification state law claim—were prematurely dismissed.

The district court dismissed Patrick's state law Illinois conspiracy and Illinois respondeat superior liability claims as time-barred, and his remaining *Monell* claims were dismissed for failure to state a claim. Patrick has not challenged these rulings on appeal and, thus, has waived consideration of them. *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009) (arguments not raised on appeal are waived).

On remand, Patrick should be given leave to amend his complaint regarding his § 1983 warrantless search and seizure allegations and the derivative claims of conspiracy, failure to intervene, and state law indemnification.

**III**

For these reasons, we AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.