**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1908
_____

DONALD F. DELADE

v.

JOHN CARGAN,
                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-16-cv-00415)
District Judge: Honorable Robert D. Mariani

_____

Argued: June 16, 2020

Before: CHAGARES, PORTER, and FISHER,
_Circuit Judges_.

(Filed: August 25, 2020)
_____

Josh Shapiro, Attorney General of Pennsylvania
Michael J. Scarinci          **[ARGUED]**
Office of the Attorney General of Pennsylvania
Strawberry Square
Harrisburg, PA 17120
          *Counsel for Appellant*


Danielle M. Mulcahey          **[ARGUED]**
George A. Reihner
Wright Reihner & Mulcahey
148 Adams Avenue
Scranton, PA 18503
          *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Donald DeLade claims that Pennsylvania State Trooper John Cargan violated his constitutional rights when Cargan caused him to be arrested and detained him based on fabricated evidence. DeLade asserted that his arrest and pretrial detention violated both the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. The District Court granted summary judgment to Cargan on the Fourth

Amendment claims.[1] But on the Fourteenth Amendment claim, it declined to grant summary judgment or qualified immunity to Cargan.

On appeal from the denial of qualified immunity, the question presented is whether DeLade's claim of wrongful arrest and pretrial detention is cognizable under the Due Process Clause of the Fourteenth Amendment. We conclude that a claim alleging unlawful arrest and pretrial detention that occur prior to a detainee's first appearance before a court sounds in the Fourth Amendment—and not the Due Process Clause of the Fourteenth Amendment. For that reason, we will reverse the District Court's order denying summary judgment.

## I

In September 2014, a sniper attacked two Pennsylvania State Troopers at the Blooming Grove Barracks, killing one and severely injuring the other. State Troopers immediately commenced a manhunt to find the sniper. The next day, State Troopers received a report that a man with a rifle was walking down a highway some fifteen miles from the Blooming Grove Barracks.

Soon after receiving the report, State Troopers identified the man as DeLade. Cargan then ran DeLade's name through a criminal-history database. The criminal-history search revealed that the sheriff's department in Escambia County, Florida had issued an outstanding warrant for DeLade's arrest. The warrant had a status of "no extradition,"

---

[1] The District Court's decision to grant summary judgment to Cargan on DeLade's Fourth Amendment claims is not at issue in this appeal.

meaning that the Escambia County Sheriff's Department did not seek to extradite DeLade. Cargan, however, called the Escambia County Sheriff's Department and requested that it change the extradition status of the warrant to "full extradition." The sheriff's department complied with Cargan's request and changed the status of the warrant.

Eventually, State Troopers found and arrested DeLade, who was still carrying his rifle. The Commonwealth charged DeLade under 42 Pa. Cons. Stat. § 9134 with arrest prior to requisition, alleging that he had been charged with a crime in Florida. DeLade remained in pretrial detention for five days awaiting his extradition hearing—his first appearance before a court. The sheriff's department informed the Commonwealth that it would not extradite DeLade, so the Commonwealth dropped the arrest-prior-to-requisition charge against him.

Before the dismissal of that charge, a second criminal complaint was filed against DeLade. In that complaint, the Commonwealth charged DeLade with being a prohibited person in possession of a firearm, in violation of 18 Pa. Cons. Stat. § 6105(a)(1). DeLade then appeared at an arraignment hearing on this charge, and the court released him on bail. The Commonwealth later charged DeLade with disorderly conduct, in violation of 18 Pa. Cons. Stat. § 5503. He eventually pleaded guilty to that charge, and a court sentenced him to twelve months' probation.

DeLade filed this lawsuit in the District Court under 42 U.S.C. § 1983, asserting that Cargan violated his rights under the Fourth Amendment and the Fourteenth Amendment's Due Process Clause by fabricating evidence to support the arrest-prior-to-requisition charge. According to DeLade, Cargan fabricated evidence by calling the Escambia County Sheriff's

4

Department and requesting that the outstanding warrant's status be changed from "no extradition" to "full extradition." The District Court granted summary judgment to Cargan on DeLade's Fourth Amendment claims, finding that probable cause existed to justify charging DeLade as a prohibited person in possession of a firearm. But it declined to grant summary judgment or qualified immunity to Cargan on DeLade's Fourteenth Amendment claim. Cargan timely appealed.

## II

The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. The parties dispute whether we have appellate jurisdiction over the denial of qualified immunity under the collateral-order doctrine.[2] "Under this doctrine, our review is plenary and 'strictly limited to the legal questions involved.'" *James v. N.J. State Police*, 957 F.3d 165, 167 (3d Cir. 2020) (citing *In re Montgomery Cnty.*, 215 F.3d 367, 372 (3d Cir. 2000)). But "[w]e lack jurisdiction to review the District Court's determination that a factual dispute is genuine[.]" *Id.* (citation omitted).

This appeal concerns a purely legal question: whether DeLade's claim of unlawful arrest and pretrial detention is cognizable under the Due Process Clause of the Fourteenth Amendment. For that reason, we have appellate jurisdiction. *See Vanderklok v. United States*, 868 F.3d 189, 197 (3d Cir. 2017) (citing *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007)).

---

[2] "[A] federal court always has jurisdiction to determine its jurisdiction." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).

**III**

Qualified immunity shields a government official from liability unless the official's conduct violated a constitutional right that is clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). But in this case, we are presented with an antecedent question: whether the Fourteenth Amendment provides DeLade a viable vehicle for relief.

More specifically, we must decide whether DeLade's claim of unlawful arrest and pretrial detention against Cargan is cognizable under the Due Process Clause of the Fourteenth Amendment, as DeLade contends, or under the Fourth Amendment only. This distinction matters because of the more-specific-provision rule. Under that rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Wharton v. Danberg*, 854 F.3d 234, 246 (3d Cir. 2017). Simply put, if DeLade's claim of unlawful arrest and pretrial detention sounds in the Fourth Amendment, then it cannot be asserted under the Due Process Clause of the Fourteenth Amendment.

**A**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons[ ] . . . against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The Supreme Court has repeatedly said that "the general rule [is] that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime."

*Bailey v. United States*, 568 U.S. 186, 192 (2013) (internal quotation marks and citation omitted). The Supreme Court has also long held that a claim alleging unlawful pretrial detention falls under the umbrella of the Fourth Amendment's protections against unreasonable searches and seizures.

In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court observed that "[b]oth the standards and procedures for *arrest and detention* have been derived from the *Fourth Amendment* and its common-law antecedents." *Id.* at 111 (emphasis added). "These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and *from unfounded charges of crime*." *Id.* at 112 (emphasis added) (internal quotation marks and citation omitted). "Under th[ese standards,] . . . a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Id.* at 113–14. Thus, the Fourth Amendment is the provision in the Constitution that promises citizens "a fair and reliable determination of probable cause as a condition [of] any significant pretrial restraint of liberty." *Id.* at 125.

The Supreme Court reaffirmed *Gerstein* in *Albright v. Oliver*, 510 U.S. 266 (1994) (plurality opinion). In *Albright*, the Supreme Court had to decide whether "to recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause." *Id.* at 268. The Court declined to do so. *Id.* Instead, the Court held that "it is the Fourth Amendment, and not substantive due process, under which [the] petitioner['s] . . . claim must be judged." *Id.* at 271. In reaching this conclusion, the Court reasoned that "[t]he Framers considered the matter of pretrial deprivations of

7

liberty and drafted the Fourth Amendment to address it." *Id.* at 274. And it recognized that "in the past [it had] noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." *Id.* (citing *Gerstein*, 420 U.S. at 114).

All told, the Supreme Court has recognized the Fourth Amendment—and not the Due Process Clause of the Fourteenth Amendment—as the appropriate provision of the Constitution under which to analyze allegations of unlawful arrest and pretrial restraint. *See id.* at 268–71; *Gerstein*, 420 U.S. at 114, 125; *see also Graham v. Connor*, 490 U.S. 386, 388 (1989) ("This case requires us to decide what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person. We hold that such claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard.").

**B**

More recently, the Supreme Court came closer to addressing the precise question before us: whether a claim of unlawful arrest and pretrial detention sounds in the Fourth Amendment or the Due Process Clause of the Fourteenth Amendment. In *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), "[t]he primary question . . . [was] whether [a detainee] may bring a claim based on the Fourth Amendment to contest the legality of his pretrial confinement." *Id.* at 914. The Supreme Court reiterated that "[t]he Fourth Amendment[ ] . . . establishes the standards and procedures governing pretrial detention." *Id.* (internal quotation marks and citation omitted). "And those constitutional protections apply *even after the start*

*of 'legal process' in a criminal case*—[in that case,] . . . after the judge's determination of probable cause." *Id.* (emphasis added). In reaching its conclusion, the Supreme Court noted that, when a probable-cause determination depends on false statements or fabricated evidence, that reality "cannot extinguish the detainee's Fourth Amendment claim—or somehow[ ] . . . *convert that claim into one founded on the [Fourteenth Amendment's] Due Process Clause.*" *Id.* at 919 (emphasis added). In the end, the Court held that "[i]f the complaint is that a form of legal process resulted in *pretrial detention unsupported by probable cause,* then the right allegedly infringed *lies in the Fourth Amendment.*" *Id.* (emphasis added).

After the Supreme Court decided *Manuel*, we recognized that *Manuel* stands for the proposition that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Manuel*, 137 S. Ct. at 920) (alterations omitted). The United States Court of Appeals for the Seventh Circuit agrees. "*Manuel* [ ] makes clear that the Fourth Amendment, *not the [Fourteenth Amendment's] Due Process Clause*, governs a claim for wrongful pretrial detention." *Lewis v. City of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019) (emphasis added).

**C**

To date, we have not delineated when a claim of unlawful pretrial detention stops implicating the Fourth Amendment and begins to fall under the Due Process Clause of the Fourteenth Amendment. *Compare Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016) (holding "that an *acquitted* criminal defendant may have a stand-alone

9

fabricated evidence claim against state actors under the [D]ue [P]rocess [C]lause of the Fourteenth Amendment" (emphasis added)), *and Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (holding that "if a defendant has been *convicted* at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim . . . based on the [Due Process Clause of the] Fourteenth Amendment" (emphasis added)), *with Davenport v. Borough of Homestead*, 870 F.3d 273, 279 (3d Cir. 2017) ("The Supreme Court has instructed that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." (internal quotation marks and citation omitted)). This case requires us to address the question more directly. We conclude that the Fourth Amendment always governs claims of unlawful arrest and pretrial detention when that detention occurs before the detainee's first appearance before a court.

Our conclusion is compelled by *Manuel*—even by one of the dissenting opinions. Although Justice Alito, joined by Justice Thomas,[3] dissented in *Manuel*, they "agree[d] with the Court's holding up to a point: The protection provided by the Fourth Amendment continues to apply after the start of legal process, if legal process is understood to mean the issuance of an arrest warrant or . . . an initial appearance under federal law." *Manuel*, 137 S. Ct. at 923 (Alito, J., dissenting) (internal

---

[3] Justice Thomas wrote his own dissent in *Manuel*, but he noted that he "join[ed] Justice Alito's opinion in full." *Manuel v. City of Joliet*, 137 S. Ct. 911, 922 (2017) (Thomas, J., dissenting).

10

quotation marks and citations omitted). So the Supreme Court in *Manuel* unanimously agreed that the Fourth Amendment covers a detainee's arrest and pretrial detention *at least* through his initial appearance before a court. *Compare id.* at 919–20, *with id.* at 923 (Alito, J., dissenting).[4]

What's more, our rule tracks the original public meaning of the Fourth Amendment. We find persuasive then-Judge Gorsuch's discussion of the Fourth Amendment's original understanding in *Cordova v. City of Albuquerque*, 816 F.3d 645 (10th Cir. 2016). In a concurring opinion, then-Judge Gorsuch observed that "textually the relevant language of the [Fourth] Amendment speaks to 'unreasonable searches and seizures.'" *Id.* at 662 (Gorsuch, J., concurring). And he noted that "the [Fourth] Amendment as originally understood focused on restraining police action before the invocation of judicial processes." *Id.* (citing Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 609–11 (1999)); *see also* Laura K. Donohue, *The Original Fourth Amendment*, 83 U. Chi. L. Rev. 1181, 1298–1308 (2016).

For these reasons, we hold that the Fourth Amendment always governs claims of unlawful arrest and pretrial detention when that detention occurs prior to the detainee's first appearance before a court.

**D**

---

[4] We recognize that claims of unlawful pretrial detention may concern restraint *after* a criminal detainee's initial appearance before a court. But because such a claim is not before us, we will not address it here.

11

We now consider whether DeLade's claim of unlawful arrest and pretrial detention is cognizable under the Due Process Clause of the Fourteenth Amendment. It is not. DeLade claims that Cargan violated his constitutional rights by causing him to be arrested and detained based on fabricated evidence—the changed status of the extradition warrant. And DeLade alleges that Cargan's conduct caused his pretrial confinement until his extradition hearing, when the Commonwealth dropped the arrest-prior-to-requisition charge.

As we have explained, all claims of unlawful arrest and pretrial detention occurring before a detainee's initial appearance fall under the Fourth Amendment. Accordingly, DeLade's claim sounds in the Fourth Amendment but not in the Fourteenth Amendment.

\* \* \*

DeLade's claim of unlawful arrest and pretrial detention is not cognizable under the Due Process Clause of the Fourteenth Amendment. We will reverse the District Court's denial of qualified immunity and remand this case with instructions to enter summary judgment in Cargan's favor.