In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-1764

DYLAN MITCHELL, *et al.*,

*Plaintiffs-Appellants*,

*v.*

EUGENE G. DOHERTY,
GARY CARUANA, and
WINNEBAGO COUNTY,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 20-cv-50285 — **John Z. Lee**, *Judge*.

———————————

ARGUED DECEMBER 7, 2021 — DECIDED JUNE 22, 2022

———————————

Before ROVNER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Winnebago County does not hold bail hearings over the weekend. As a result, suspects may wait longer than forty-eight hours before a judge can set bail. Eight detainees, who were held for up to sixty-eight hours, sued the County for maintaining a policy that allegedly violates the

Fourth Amendment. The district court granted the defend-
ants' motion to dismiss for failure to state a claim. We affirm.

**I.**

Police arrested eight demonstrators in Rockford, Illinois,
seven on a Friday (Dylan Mitchell, Dayna Schultz, Larissa
Walston, Ivan Holland, Ross Wagner, Andrew Ehrhardt, and
Jaylen Butler) and one on a Saturday (Michael Riggs). All
eight waited until Monday at 1:30 p.m. to receive a bail hear-
ing, at which point seven were released either on their own
recognizance or on bond.[1] The charges against Shultz,
Ehrhardt, and Butler have been dismissed, and the court sen-
tenced Mitchell, Riggs, and Wagner to probation or condi-
tional discharge. In total, the Friday detainees were held for
about sixty-eight hours, and the Saturday detainee was held
for slightly over forty-eight hours.

Plaintiffs allege the detention caused numerous injuries:
Three missed work, and Mitchell lost her job altogether; Riggs
could not seek medical attention for an open shoulder wound
and bruised ribs while in jail; Walston endured three days of
solitary confinement, was let out only once for a one-hour pe-
riod, and was not allowed to take her prescription medication;
and Wagner was denied medical attention for a concussion
and a bleeding head wound.

Plaintiffs first sued over an alleged failure to make a prob-
able-cause determination within forty-eight hours, an

---

[1] Ivan Holland had bail set at $50,000, pleaded guilty to burglary, and re-
ceived a sentence of time served; plaintiffs concede that he cannot seek
damages for his detention. *See Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir.
2013).

uncontested violation of the Fourth Amendment. But upon learning that a judge does make a probable-cause determination within forty-eight hours, albeit on an ex parte basis, Plaintiffs filed an amended complaint, bringing claims under § 1983 against Eugene Doherty, the Chief Judge of the 17th Judicial Circuit Court, and Winnebago County Sheriff Gary Caruana, in their official capacities, as well as Winnebago County. They argued that the County violated the Fourth Amendment by denying them a bail hearing within forty-eight hours after detention even though a probable-cause determination had been made within that period. The complaint sought injunctive and declaratory relief against the chief judge and damages against Sheriff Caruana as well as the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Plaintiffs, in conjunction with filing the amended complaint, moved for a preliminary injunction and class certification. The defendants moved to dismiss the counts for failure to state a claim, and the district court granted the defendants' motion and denied the class-certification motion as moot. This timely appeal followed.

## II.

Plaintiffs submit that Winnebago County violates the Fourth Amendment by not providing a bail hearing within forty-eight hours after a suspect's arrest. We review the dismissal of a complaint for failure to state a claim de novo, construing all allegations and drawing all reasonable inferences in favor of plaintiffs. *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512 (7th Cir. 2020).

**A.**

Plaintiffs argue that Supreme Court and circuit precedent requires a bail hearing within forty-eight hours after a suspect's arrest. We disagree.

The Supreme Court has twice addressed the procedural requirements for probable-cause determinations but never considered the timing of bail hearings. *See Gerstein v. Pugh*, 420 U.S. 103 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In *Gerstein v. Pugh*, a Florida law allowed prosecutors to charge all non-capital offenses by information "without a prior preliminary hearing and without obtaining leave of court." 420 U.S. at 105. The only way to obtain a judicial determination of probable cause was either through a special statute or by an arraignment, both of which could have taken over a month. *Id.* at 106. Florida changed this procedure but still did not offer neutral judicial review within twenty-four hours. *Id.* at 109. Two individuals charged by information sued over alleged Fourth Amendment violations. *Id.* at 105.

The case presented the question of "whether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention." *Id.* at 111. An arrest must be supported by probable cause. *Id.* But while prearrest review is preferred, a requirement that an officer always obtain an arrest warrant ahead of time would handicap law enforcement. *Id.* at 113. "Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* at 114. Thus, the Court concluded, the Fourth Amendment mandates a prompt "judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* Florida's system of detaining someone by a prosecutor's information

violated the Constitution. The Court left open though just how promptly the state must provide a probable-cause determination.

*County of Riverside v. McLaughlin* took up this unanswered question. 500 U.S. 44. There, plaintiffs sued the county for the delay in providing probable-cause determinations. *Id.* at 47. The county provided probable-cause determinations within forty-eight hours for a business week but excluded weekends and holidays from this calculation. *Id.* Thus, a person arrested over the Thanksgiving holiday could be held for seven days— arrested on a Tuesday with no hearing until the following Monday. *Id.* The district court imposed an injunction mandating that all persons arrested be given a probable-cause determination within thirty-six hours, regardless of weekends or holidays. *Id.* at 49. The Court of Appeals affirmed the order granting the injunction, and the county appealed. *Id.* at 49–50.

The Supreme Court reversed. States have a strong interest in promoting public safety, and the "demands of federalism" require "flexibility and experimentation." *Id.* at 53. At the same time, prolonged detention harms arrestees through lost wages and impaired family relationships. *Id.* at 52. In balancing "the rights of individuals and the realities of law enforcement," the Court announced the rule for probable-cause determinations: generally, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will … comply with the promptness requirement of *Gerstein*," but an arrestee can still "prove that his or her probable cause determination was delayed unreasonably" when, for example, the delays were "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.*

at 56. The Court further remarked that bail hearings and ar-raignments *might* be combined with probable-cause determinations, but states were not required to do so. *Id.* at 58.

Our caselaw, although admittedly imprecise at times, has likewise never held that a bail hearing must occur within forty-eight hours after arrest. *See Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012); *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013). In *Paine v. Cason*, police took Christina Eilman, a woman suffering from bipolar disorder, into custody and released her on her own recognizance in a high-crime area. 678 F.3d at 504. She wandered until she eventually reached an apartment where a man raped her at gunpoint. *Id.* at 506. Trying to escape, Eilman jumped out of a window. *Id.* The resulting fall damaged her brain. *Id.* Eilman sued, arguing in part that she should have been kept in custody longer to facilitate medical care. *Id.* In denying recovery, we stated that "[e]xisting law creates a right to be released on bail (for bailable crimes) as promptly as possible, with 48 hours as the outside time before presentation to a judicial officer who can make an authoritative decision." *Id.* at 508 (citing *McLaughlin*, 500 U.S. 44). But that language does not accurately reflect the holding of *McLaughlin* and is nonbinding dicta. *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) ("[D]ictum is not authoritative. It is the part of an opinion that a later court … is free to reject."). Eilman posited a near opposite theory as plaintiffs here: she claimed that she had a right to be *detained*, not that she had a right to be *released* at a bail hearing. As such, we had no occasion to consider what bail-hearing procedure the Fourth Amendment commanded. This passing and mistaken reference can be "deleted without seriously impairing the analytical foundations of the holding." *Id*.

*Bridewell v. Eberle*, while also containing some ambiguous language, never extended *McLaughlin*'s probable-cause requirements to bail hearings. 730 F.3d at 675. There, Sara Bridewell allegedly shot and killed a man, though she was never convicted of the murder. *Id.* She pleaded guilty only to a reduced drug charge and was sentenced to time served; the prosecutors dismissed the murder charge. *Id.* Bridewell then sued Chicago, arguing that the police took too long to present her to a judge. *Id.* Because Bridewell was not injured by her sixty-three-hour detention, we decided she could not recover damages under *McLaughlin*. *Id.* at 676. We added that *McLaughlin* mandates "that the fourth amendment allows no more than 48 hours for the police to get a magistrate's approval of a suspect's continued detention" and that "the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on 'incorrect or unfounded suspicion' is short-lived and that persons properly arrested but entitled to bail can be released promptly." *Id.* (quoting *McLaughlin*, 500 U.S. at 52 (internal citation omitted)). This observation essentially summarizes the holding of *McLaughlin*: the police must obtain a magistrate's approval for a probable-cause determination within forty-eight hours to ensure that unlawful detention is "short-lived." *Id.* Because jurisdictions can combine probable-cause determinations and bail hearings, a prompt hearing often allows a suspect to be released on bail quickly, but we never held that a bail hearing alone must be conducted within forty-eight hours. Any suggestion that a bail hearing must be held at the same time as a probable-cause determination would have been dicta. Bridewell did not challenge the timing of the bail hearing. Indeed, "[e]vents showed that Bridewell … was not entitled to release on bail" in the first place. *Id.*

And no other circuit has imposed a forty-eight requirement for bail hearings after arrest. *See Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018); *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018). In *Walker v. City of Calhoun*, Maurice Walker was arrested for a crime punishable by a fine of up to $500. 901 F.3d at 1251. After being taken to jail, an officer told Walker that he could not go free unless he paid a $160 cash bond, which neither Walker nor his family could afford. *Id.* Walker filed a class action lawsuit against the city, and the district court issued a preliminary injunction requiring that bail hearings be held within twenty-four hours after arrest. *Id.* at 1266. The Eleventh Circuit invalidated the injunction because the city of Calhoun already offered bail hearings within forty-eight hours. Given *McLaughlin*'s holding that a person can generally be held without a probable-cause determination for forty-eight hours, "[i]t stands to reason that the City can take the same 48 hours to set bail for somebody held *with* probable cause." *Walker*, 901 F.3d at 1266. The Court clarified that it did not "decide whether a jurisdiction could adopt a system that allows a longer period of time than 48 hours to make a bail determination, because the City does not seek to take longer than 48 hours." *Id.* at 1267 n.13. Both the federal system and, potentially, Georgia law allow for longer than forty-eight hours before a bail hearing, so a more complete factual record would be necessary. *See id.*

Similarly, the Fifth Circuit struck down a district court's injunction requiring a bail hearing within twenty-four hours.

*See ODonnell*, 892 F.3d 147.[2] The district court imposed a sweeping injunction to reform Harris County's bail system, including a requirement that the county hold a bail hearing within twenty-four hours. *Id.* at 160. The Fifth Circuit believed that "the district court's 24-hour requirement [was] too strict under federal constitutional standards" and added in passing that *McLaughlin* "explicitly included bail hearings within [the forty-eight-hour] deadline." *Id.* As explained, *McLaughlin* made no such proclamation, and this passage is dicta. The question before the Fifth Circuit was whether the district court's injunction misinterpreted the constitutional requirements, which it did. Any remark about what the Fourth Amendment required would be unnecessary for the outcome of the case. *See Crawley*, 837 F.2d 291.

Thus, precedent dictates that only a probable-cause determination must be held within forty-eight hours. The constitutionally required timing of a bail hearing is an issue of first impression.

**B.**

We turn now to the question of whether, under the Fourth Amendment, a bail hearing, like a probable-cause determination, must be held within forty-eight hours and, relatedly, whether the County's practice of holding hearings up to sixty-eight hours after a suspect's arrest is constitutional.

---

[2] The Fifth Circuit overruled *ODonnell v. Harris County* and *ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018), on different grounds. *Daves v. Dallas County*, 22 F.4th 522, 540–41 (5th Cir. 2022) (en banc).

**1.**

We begin with the County's argument that the Fourth Amendment does not establish the constitutional requirements for a bail hearing and, thus, we should affirm on that basis alone. This argument implicates the more general question of when Fourth Amendment protections cease. *See* Catherin T. Struve, *The Conditions of Pretrial Detention*, 161 U. Pa. L. Rev. 1009 (2013) (discussing the implications of this question on how courts approach general conditions of confinement, detainee medical care, and excessive-force claims). Admittedly, again the caselaw is unclear.

In *Gerstein*, the Supreme Court held that the Fourth Amendment, not the Due Process Clause, governs probable-cause determinations. 420 U.S. at 125 n.27. It explained that "[b]oth the *standards and procedures* for arrest *and detention* have been derived from the Fourth Amendment and its common-law antecedents." 420 U.S. at 111 (emphasis added). The Fourth Amendment is the appropriate vehicle because it "was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial." *Id.* at 125 n.27. *McLaughlin* discussed the possibility of combining probable cause determinations and bail hearings, suggesting that the Fourth Amendment might apply to more judicial determinations than those concerning probable cause. *See, e.g.*, 500 U.S. at 58.

*Albright v. Oliver* produced a fractured opinion, with several justices indicating that the Fourth Amendment safeguarded some phases of pretrial detention related to a probable cause beyond the initial determination. 510 U.S. 266

(1994). The plaintiff sued for various pretrial restraints placed on him in violation of the Fourteenth Amendment's substantive due process guarantee. *Id.* at 268–69 (plurality). The claim was "a very limited one …. that the action of respondents infringed his … right to be free of prosecution without probable cause." *Id.* at 271. He never pursued a Fourth Amendment theory, which proved fatal for his complaint. The plurality explained that "the specific guarantees of the various provisions of the Bill of Rights" are preferred over the, at times, more vague protections of the Due Process Clause. *Id.* at 273. "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274. These "deprivations of liberty [] go hand in hand with criminal prosecutions." *Id.* Because the Fourth Amendment applied, not the Due Process Clause, the four justices concluded that Albright could not proceed.

Justice Ruth Bader Ginsburg, who joined the plurality, elaborated on this conclusion in her concurrence. At common law, a seizure "continue[d] even after release from official custody." *Id.* at 278 (Ginsburg, J., concurring). A detainee "is hardly freed from the state's control upon his release from a police officer's physical grip," so logically the Fourth Amendment governs after a probable-cause determination for someone released on conditions before trial. *Id.* Justice David Souter concurred in the judgment without joining the plurality. He reasoned that reliance on one provision of the Constitution does not always "pre-empt a broad field as against [] more general one[s]." *Id.* at 286 (Souter, J., concurring). But the particular injury suffered, "the initiation of a baseless prosecution," is specific to the Fourth Amendment. *Id.* at 289. The "rules of recovery for such harms have naturally coalesced under the Fourth Amendment, since the injuries usually occur

only after an arrest or other Fourth Amendment seizure …." *Id.* at 290. The two dissenters, for their part, agreed with Justice Ginsburg's "explanation of why the initial seizure of petitioner continued until his discharge and why the seizure was constitutionally unreasonable" but did not want to foreclose a due-process challenge. *Id.* at 307 (Stevens, J., dissenting). Counting votes, at least five Justices, and as many as seven, endorsed *some* theory that the Fourth Amendment extended beyond a probable-cause determination in *some* circumstances, though the contours are still opaque.

The Supreme Court's recent decision in *Manuel v. City of Joliet* clarified that the Fourth Amendment extends beyond the start of legal process but left open whether it applies outside some defect in the probable-cause determination. 137 S. Ct. 911 (2017). Police arrested Elijah Manuel on the suspicion that his vitamin bottle contained illegal drugs despite a negative field test and a negative test from an evidence technician for any controlled substances. *Id.* at 915. A judge, relying on the criminal complaint, which was based on fabricated evidence, found probable cause for further detention, thus beginning the "legal process." *Id.* Eventually, the Illinois police laboratory analyzed the pills again and concluded that they were not a controlled substance. *Id.* After waiting for more than a month, the state dismissed the drug charge. *Id.* In the end, Manuel was detained for seven weeks. *Id.* at 915–16. Manuel sued the city and several police officers, asserting that they violated his Fourth Amendment rights. *Id.* at 916. The district court dismissed the lawsuit because Manuel brought the claim more than two years after his arrest. *Id.* We affirmed under our prior caselaw, which held that once legal process began, the Fourth Amendment "falls out of the picture," and the detainee must seek a remedy under the Due Process

Clause. *Manuel v. City of Joilet*, 590 F. App'x 641, 643–44 (7th Cir. 2015) (quoting *Llovet v. City of Chicago*, 761 F.3d 759, 763 (7th Cir. 2014)).

The Supreme Court rejected our rule and repeated, "The Fourth Amendment … establishes the minimum constitutional 'standards and procedures' not just for arrest but also for ensuing 'detention.'" *Manuel*, 137 S. Ct. at 917 (quoting *Gerstein*, 420 U.S. at 111). Thus, "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Id.* at 918. Manuel stated a viable claim under the Fourth Amendment for unlawful detention "because Manuel's subsequent weeks in custody were [] unsupported by probable cause, and so [] constitutionally unreasonable." *Id.* at 919. While the Court made clear that the commencement of legal process did not spell the end for a Fourth Amendment claim, its analysis was still tethered to probable cause. When exactly the amendment recedes—and other constitutional protections might begin—remains unanswered.[3] *Cf.* Jenny E. Carroll, *The Due Process of Bail*, 55 Wake Forest L. Rev. 757, 788 (2020) ("One way to read *Gerstein* is that expanded considerations in pretrial hearings—such as bail—also expand procedural protections, including a requirement that the state demonstrate a link between its articulated goal and the proposed deprivation of liberty for the suspect."); Kellen Funk,

---

[3] *See also Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022) (holding that the Supreme Court's precedents recognize a malicious-prosecution claim under the Fourth Amendment but again not deciding the scope of the amendment); *id.* at n.2 (noting that a malicious-prosecution claim "is housed in the Fourth Amendment" and that the analysis might be different under the Due Process Clause).

*The Present Crisis in American Bail*, 128 Yale L.J.F. 1098, 1121 (2019) ("*Gerstein* is open to two entirely different readings. … Several times in its decision the Court incautiously switched from speaking about probable cause *for the arrest* to probable cause *for the detention* without considering whether different standards ought to apply in the days and weeks after an arrest.").

Even before *Manuel*, the circuits took divergent approaches as to when Fourth Amendment protections terminate. At least one circuit drew the line at a suspect's arrest, regardless of whether the arrest occurred with a warrant. *See, e.g., Orem v. Rephann*, 523 F.3d 442, 443–44, 446 (4th Cir. 2008), *abrogated on other grounds by Brooks v. Johnson*, 924 F.3d 104, 114 n.4 (4th Cir. 2019) (applying the Due Process Clause to an excessive-force claim); *see also* Struve, *supra*, at 1021. Other circuits selected the probable-cause determination. *See, e.g., Broussard v. Parish of Orleans*, 318 F.3d 644, 662 (5th Cir. 2003) ("As the arrestees do not challenge their initial arrest and confinement … there simply is no demonstration of a Fourth Amendment problem*."); Aldini v. Johnson*, 609 F.3d 858, 866 (6th Cir. 2010) ("Placing the dividing line at the probable-cause hearing for those arrested without a warrant does [] have a basis in Supreme Court precedent."); *Golberg v. Hennepin County*, 417 F.3d 808, 811 (8th Cir. 2005) ("Our opinions … suggest[] that the right to release from initially lawful detention is based upon the substantive component of the Due Process Clause, rather than the Fourth Amendment."); *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996) ("We hold, therefore, that the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is

released or found to be legally in custody based upon proba-
ble cause for arrest.").

The remaining circuits had adopted the "continuing sei-
zure" theory, which posits a person is still seized within the
meaning of the Fourth Amendment after the probable-cause
determination, extending into pretrial detention. *See, e.g.*,
*Schneyder v. Smith*, 653 F.3d 313, 321–22 (3d Cir. 2011) ("When
the state places constitutionally significant restrictions on a
person's freedom of movement for the purpose of obtaining
his presence at a judicial proceeding, that person has been
seized within the meaning of the Fourth Amendment." (foot-
note omitted)); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997)
("[W]hile a state has the undoubted authority … to restrict a
properly accused citizen's constitutional right to travel out-
side of the state as a condition of his pretrial release … such
conditions are appropriately viewed as seizures within the
meaning of the Fourth Amendment.").

After *Manuel*, there is still no consensus. *Compare DeLade
v. Cargan*, 972 F.3d 207, 212 (3d Cir. 2020) ("We conclude that
the Fourth Amendment always governs claims of unlawful
arrest and pretrial detention when that detention occurs be-
fore the detainee's first appearance before a court."), *and Lentz
v. Taylor*, 2021 WL 5121247, *5 (3d Cir. 2021) (unpublished)
("The Third Circuit has adopted the continuing seizure theory
and has further analyzed the parameters of what amounts to
a pre-trial seizure."), *with Lester v. Roberts*, 986 F.3d 599, 609
(6th Cir. 2021) ("[T]he presence of probable cause for a prose-
cution or pretrial detention dooms any Fourth Amendment
claim."); *see also Page v. King*, 932 F.3d 898, 905 (9th Cir. 2019)
("In so holding, we do not speak to the merits of Page's due
process claim [premised on a thirteen-year detention].

Indeed, the Supreme Court's recent opinion in *Manuel* … may doom Page's petition unless he is permitted to amend to allege a Fourth Amendment violation."). The Eleventh and Fifth Circuits, for their part, analyzed challenges to bail systems under different constitutional provisions, but both courts based their reasoning on *Gerstein* and *McLaughlin*, cases interpreting the Fourth Amendment. *See Walker*, 901 F.3d at 1265–66 (Due Process and Equal Protection Clauses); *ODonnell*, 892 F.3d at 160 (Due Process Clause).

Prior to *Manuel*, we charted the middle course: the Fourth Amendment applies until the probable-cause determination, at which point the Fourteenth Amendment governs. *See, e.g., Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013); *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011); *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006).[4] After *Manuel*, our cases are not as clear. We noted, for example, in *Mitchell v. City of Elgin* that the Fourth Amendment might govern the conditions of pretrial release because of the "significant restrictions on liberty" and that some pre-*Manuel* cases are no longer good law. 912 F.3d 1012, 1016 (7th Cir. 2019). We did not, however, decide the scope of a Fourth Amendment "seizure" in *Mitchell*. *Id.* at 1017. In *Pulera v. Sarzant*, we repeated our pre-*Manuel* rule that "[b]efore a finding of probable cause, the Fourth Amendment protects an arrestee; after such a finding, the Fourteenth Amendment protects a pretrial detainee." 966 F.3d 540, 549 (7th Cir. 2020). At the same time, we acknowledged that *Manuel* might require us to reconsider the dividing

---

[4] We do not cast doubt on our prior holdings that the Fourth Amendment governs before a probable-cause determination; we are only concerned here with how long this protection continues.

line, but because the parties did not ask us to, we declined to do so. *Id.* at 549 n.1. Moreover, the difference between the Fourth Amendment and the Fourteenth Amendment did not matter, as "the standards [for the issue were] identical in all respects." *Id.* at 550.

Shortly after *Pulera*, we were presented with a bail challenge in *Williams v. Dart*. 967 F.3d 625 (7th Cir. 2020). There, the plaintiffs sued over a county's bail system, in part, on a Fourth Amendment theory. *Id.* at 630–32. The district court dismissed the claim, and we reversed. *Id.* at 631. The case did not relate to the probable-cause standard—no one disputed that the police had probable cause to detain the plaintiffs. *Id.* at 632. Instead, it centered solely on "the courts' bail orders and on that basis continuing to hold persons already admitted to bail without purpose or plan for their release." *Id.* We concluded that the plaintiffs' claims, nonetheless, fell under the Fourth Amendment without recognizing the conflict with our prior caselaw. *Id.* at 636. The Fourth Amendment, we decided, requires "that whatever arrangement is adopted [about process bail admissions] not result in seizures that are unreasonable in light of the Fourth Amendment's history and purposes." *Id.* Because the plaintiffs stated a claim of unlawful detention, they could proceed. *Id.* at 637; *accord* Funk, *supra*, at 1121 (*Pulera* aligns with the more expansive of two readings for *Gerstein*).

Ultimately, given the far-reaching implications and the limited briefing on this issue, we need not decide whether the Fourth Amendment applies after a judge has made a probable-cause determination to the timing of a bail hearing because, assuming that it does, plaintiffs' claim still fails. In assessing the constitutionally required timing of a bail hearing

under the Fourth Amendment, we consider the traditional in-
terpretive tools: text, history, tradition, and guidance from
caselaw.

**2.**

The Fourth Amendment guarantees "[t]he right of the
people to be secure in their persons, houses, papers, and ef-
fects, against unreasonable searches and seizures … and no
Warrants shall issue, but upon probable cause …." U.S. Const.
amend. IV. The Amendment's text establishes the procedure
for the issuing of a warrant, enshrining a key protection
against "rash and unreasonable interferences with privacy
and from unfounded charges of crime," *Gerstein*, 420 U.S. at
112, but makes no mention of bail hearings.

Plaintiffs have not provided any evidence from history or
tradition to support their argument. *See Atwater v. City of Lago
Vista*, 532 U.S. 318, 333 (2001) (recognizing that courts con-
sider history, English decisions, legal treatises and dictionar-
ies, procedure manuals, and the common-law history when
interpreting the Fourth Amendment); *see also United States v.
Barr*, 960 F.3d 906, 916 (7th Cir. 2020) ("It is not our job to do
the legal research that [the parties have] omitted." (quoting
*Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581
(7th Cir. 2005))). The historical evidence, based on our own
review, offers little guidance on when bail hearings were typ-
ically held, and nothing suggests that a suspect had a right to
a bail hearing within forty-eight hours.

Bail can be traced back to the early Middle Ages, originat-
ing from the Anglo-Saxon system of resolving grievances.
June Carbone, *Seeing Through the Emperor's New Clothes: Redis-
covery of Basic Principles in the Administration of Bail*, 34

Syracuse L. Rev. 517, 519–20 (1983). The Magna Carta promised that "[n]o freeman shall be taken or imprisoned … except by the lawful judgment of his peers or by the law of the land," 1215, 17 John c. 39 (Eng.) *translated in* James Clarke Holt, *Magna Carta* 461 (2d ed. 1992), and the later Statute of Westminster allowed some individuals to be released on "sufficient Surety," 1275, 3 Edw. C.15 (Eng.). By the end of the seventeenth century in England, Parliament created an effective system that both entitled the defendant to be released on bail for certain offenses and protected against excessive bail, the latter a right established by the English Bill of Rights (1689), but never guaranteed a suspect a right to a hearing within forty-eighty hours. Caleb Foote, *Coming Constitutional Crisis in Bail: I*, 113 U. Pa. L. Rev. 959, 968 (1965). In fact, England's Habeas Corpus Act of 1679, enacted to address "great delays" in the bail system, required that a petitioner be "ascertained by the judge or court" only within "three days," sometimes longer if the person resided a certain distance away. 31 Car. 2 c. 2 (Eng. & Wales).

The colonies largely adopted the English bail system without requiring hearings within a certain timeframe. *See* William F. Duker, *The Right to Bail: A Historical Inquiry*, 42 Alb. L. Rev. 33, 79 (1977). Connecticut, Delaware, Georgia, Maryland, and Rhode Island simply provided "the same liberties and immunities as if they had been born within the realm of England." *Id.* at 81. And the colonial bail systems continued, often without change, after the American Revolution. *Id.* The First Congress omitted an explicit right to bail from the Bill of Rights, only prohibiting excessive bail. U.S. Const. amend. VIII; *United States v. Salerno*, 481 U.S. 739, 752 (1987) ("The Eighth Amendment addresses pretrial release by providing merely that '[e]xcessive bail shall not be required.' This

Clause, of course, says nothing about whether bail shall be available at all."). The Judiciary Act of 1789, much like earlier English and colonial laws, established a right to bail in non-capital criminal cases without detailing a bail hearing's procedure. Foote, *supra*, at 971.

At common law, shortly after arrest, a suspect was brought before a justice of the peace, who would "examine" the prisoners "to determine whether there was reason to believe the prisoner had committed a crime." *Gerstein*, 420 U.S. at 114–15. If support existed for the arrest, the justice would either jail the person or release him on bail pending trial. *Id.* The Framers incorporated this model into the Bill of Rights, and the practice continued after the Fourteenth Amendment was ratified. *Id.* at 115–16. But this procedure ensured that a suspect would not be detained without a judicial determination of probable cause, a bedrock principle of the Fourth Amendment. This "examination" did not require that a bail hearing also be held with a probable-cause determination.

Pretrial detention, the Supreme Court has explained, requires balancing different interests.[5] *McLaughlin*, 500 U.S. at 53; *see also United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (en banc) ("Time and again, the Supreme Court has held that 'the ultimate touchstone of the Fourth Amendment is reasonableness.'" (quoting *Lange v. California*, 141 S. Ct. 2011, 2017 (2021))). "The consequences of prolonged detention may be more serious than the interference occasioned by arrest.

---

[5] Although we decline to extend *McLaughlin*'s forty-eight-hour rule for probable-cause determinations to bail hearings, we believe that the general considerations articulated by the Supreme Court in *Gerstein* and *McLaughlin* are germane to our inquiry, just with diminished force.

Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein*, 420 U.S. at 114; *see generally* Crystal S. Yang, *Toward an Optimal Bail System*, 92 N.Y.U. L. Rev. 1399 (2017). Lost earnings for a detained defendant can total tens of thousands of dollars over a lifetime. Yang, *supra*, at 1424. Someone detained for only three days is seven times more likely to experience employment disruption. Alexander M. Holsinger & Kristi Holsinger, *Analyzing Bond Supervision Survey Data: The Effects of Pretrial Detention on Self-Reported Outcomes*, 82 Fed. Probation 39, 43 (2018). Children might go without parental figures, and jails expose innocent or low-danger people to injury through contact with other inmates, guards, and natural hazards. *See* John J. Gibbons & Nicholas de B. Katzenbach, *Confronting Confinement: A Report of the Commission on Safety and Abuse in America's Prisons*, 22 Wash. U. J.L. & Pol'y 385, 402–03 (2006). The effects of a bail hearing often last: pretrial detainees carry the stigma of a criminal conviction, and pretrial detention may increase the chance of conviction and incarceration. Yang, *supra*, at 1419, 1423.

At the same time, the "demands of federalism" afford states "flexibility and experimentation." *McLaughlin*, 500 U.S. at 53 (quoting *Gerstein*, 420 U.S. at 123). States must manage a large volume of bail hearings with limited resources. Requiring hearings to be held on weekends would force governments to raise revenue, expend money, and hire additional personnel. Before releasing someone on bail, a judge must assess a suspect's dangerousness and risk of flight, information that the government might not have readily available. *See, e.g.*, 18 U.S.C. § 3142(e)(1). The state has an interest in preventing pretrial flight and potential crime. *See* Yang, *supra*, at 1429–33. Between 1990 and 2004, a bench warrant was issued for failure

to appear in court for almost one in four felony defendants. Thomas H. Cohen & Brian A. Reaves, *Bureau of Justice Statistics, Pretrial Release of Felony Defendants in State Courts* 7 (2007).[6] One comprehensive study surveying state-court data determined that "initial pretrial release leads to substantial increases in failing to appear for required court appearances." Will Dobbie, *et al.*, *The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 108 Am. Econ. Rev. 201, 226 (2018). "[P]retrial release increases the probability of failing to appear in court by 15.6 percentage points …." *Id.* at 203. Rushing the initial bail determination, therefore, may endanger later prosecutorial success.

Plaintiffs argue that the absence of a bail hearing within forty-eight hours unfairly harms the innocent. Unlike probable-cause determinations, however, after forty-eight hours, bail-eligible detainees have already had a neutral judge determine whether the "facts and circumstances … warrant a prudent man in believing that the (suspect) has committed" an offense. *Gerstein*, 420 U.S. at 111–12 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Mandating a bail hearing within forty-eight hours would also cast doubt on the constitutionality of the Bail Reform Act of 1984. Section 3142(f) provides that a bail hearing "shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the

---

[6] "Overall, 28% of the defendants who failed to appear in court and had a bench warrant issued for their arrest were still fugitives at the end of a 1-year study period. This was 6% of all defendants released pretrial …." *Id.* at 8.

Government" seeks a continuance. A government attorney can seek a continuance for "three days (not including any intermediate Saturday, Sunday, or legal holiday)," and a defense attorney can request a continuance for "five days (not including any intermediate Saturday, Sunday, or legal holiday)." 18 U.S.C. § 3142(f). Plaintiffs claim that, in contrast to federal law, Winnebago County's bail system permits "delay for delay's sake." But the Bail Reform Act does not require that the government justify the delay—it could be "delay for delay's sake." An attorney can ask for the continuance for any reason.

Moreover, several states do not provide bail hearings within forty-eight hours. *See, e.g.*, Ariz. R. Crim. P. 7.2(b)(4)(B) ("[T]he [bail] hearing must be held as soon as practicable, but no later than 7 days after the initial appearance unless the detained defendant moves for a continuance or the court finds that extraordinary circumstances exist and delay is indispensable to the interests of justice."); Ga. Code Ann. § 17-4-26 (2021) ("Every law enforcement officer arresting under a warrant shall exercise reasonable diligence in bringing the person arrested before the judicial officer authorized to examine, commit, or receive bail and in any event to present the person arrested before a committing judicial officer within 72 hours after arrest."); La. C. Cr. P. Art. 313(A)(2) (2016) ("If the court orders a contradictory hearing, the hearing shall be held within five days from the date of determination of probable cause, exclusive of weekends and legal holidays."); N.M. R. Crim. P. 5-401(A)(1) ("If a case is initiated in the district court, and the conditions of release have not been set by the magistrate or metropolitan court, the district court shall conduct a hearing … if the defendant remains in custody, three (3) days after the date of arrest if the defendant is being held in the

local detention center, or five (5) days after the date of arrest if the defendant is not being held in the local detention center"); Ohio Rev. Code Ann. § 2937.222(A) (2022) ("On the motion of the prosecuting attorney or on the judge's own motion, the judge shall hold a [bail] hearing …. Except for good cause, a continuance on the motion of the state shall not exceed three court days.").

Of course, states can choose to hold all bail hearings within forty-eight hours, which may prove easier with technological advancements. *See, e.g.*, Ala. Code § 15-13-105 (2019) (twenty-four hours); Alaska Stat. Ann. § 12.30.006(b) (2016) (forty-eight hours); Colo. Rev. Stat. § 16-4-102 (2021) (forty-eight hours); S.C. Code Ann. § 22-5-510 (2017) (twenty-four hours); Tex. Code Crim. Proc. Ann. art. 17.028(a) (2022) (forty-eight hours). But the Fourth Amendment does not compel them to. Judges should proceed cautiously when asked to step into the shoes of legislators, as we do here.

\* \* \*

In short, we hold that the Fourth Amendment does not require a bail hearing within forty-eight hours after arrest. Furthermore, we conclude that bail hearings held within sixty-eight hours—because suspects were arrested on a Friday (as the suspects held for the longest time in this case were)—are constitutional under the Fourth Amendment. We leave for another day whether a longer detention without a bail hearing violates the Constitution.

### III.

For these reasons, we affirm the judgment of the district court.