**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-1803

———————

TIM BURTON,
Appellant

v.

MARC ZIEGLER, in his individual capacity as a Trooper for the
Pennsylvania State Police

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:21-cv-01215)
Magistrate Judge:  Honorable Kezia O. L. Taylor

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 23, 2025

———————

Before:  PHIPPS, CHUNG, and ROTH, *Circuit Judges*

(Filed: August 26, 2025)

———————

OPINION*

———————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

A nineteen-year-old woman, accompanied by her mother, reported to a state trooper that her stepfather had sexually assaulted her on multiple occasions beginning at age fifteen. Based on that account, the trooper wrote an affidavit of probable cause, obtained an arrest warrant from a magistrate judge, and arrested the man on fourteen counts related to rape. But after none of those counts resulted in a conviction, the stepfather filed this civil rights lawsuit under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment rights under a theory of malicious prosecution. In response to the state trooper's dispositive motion, the District Court granted summary judgment in his favor. For the reasons below, on *de novo* review, we will affirm that judgment.

## FACTUAL BACKGROUND

On May 7, 2017, nineteen-year-old D.M. and her mother went to the Troop B Belle Vernon State Police Barracks in Westmoreland County, Pennsylvania, to report a crime. There, D.M. described to one of the on-duty officers, Trooper Marc Ziegler, how her stepfather, Tim Burton, had sexually assaulted her on multiple occasions starting when she was fifteen. Ziegler later testified that he "wholeheartedly believed" D.M. and that her allegations "tugged at [his] heartstrings a little bit." Ziegler Dep. 13:24–25, 23:1–2 (JA273, 283).

After interviewing D.M., Ziegler spoke with her mother. D.M.'s mother expressed shock and frustration – in part because, as she explained to Ziegler, D.M.'s biological father had previously been arrested for possession of child pornography – but she stated that she would support D.M. Also, according to her later testimony, D.M.'s mother told Ziegler that she thought D.M. was lying, and in response, he stated that Burton was a 'monster' and that it was crucial that she believe her daughter.

2

The next day, D.M. and her mother returned to the barracks. According to D.M.'s mother, D.M. had left voicemails with Ziegler the night before stating that she wanted to recant and did not want to go through with the matter. But according to Ziegler, D.M. went to the barracks because she was nervous about pressing charges and concerned that, because Burton was the primary provider, she and her mother would be left destitute. Regardless of her motivation for returning to the barracks the next day, after D.M. spoke with Ziegler and other officers and, according to her mother, they told her that she needed to request a restraining order, she opted to proceed with pressing charges.

Later that week, Ziegler drafted an affidavit of probable cause and submitted it to a state magistrate judge. That sworn statement detailed D.M.'s allegations against her stepfather. It described how the first assault occurred when she was fifteen; how he physically forced her to perform oral sex on him on at least eight different occasions; and how he forced her to have vaginal sex with him on at least three occasions.

The affidavit described only D.M.'s allegations. It did not mention anything else that occurred during her initial visit to the barracks or that she returned to the barracks the following day. Nor did it reflect the version of the events reported by D.M.'s mother – that her daughter was lying and that D.M. returned to the barracks to recant. The affidavit likewise did not include Ziegler's statement to D.M.'s mother that Burton was a 'monster.'

Based on that affidavit, the magistrate judge approved Burton's arrest on May 11, 2017, on fourteen counts related to statutory rape. Burton disputed his arrest and petitioned for a writ of habeas corpus. Among other things, he argued that the Commonwealth had failed to establish a *prima facie* case for thirteen of the fourteen counts. The trial judge dismissed two of the charges, and the remainder proceeded to trial.

Following the trial, the jury found Burton not guilty on four counts and was hung on the remaining counts. Rather than retry Burton on those eight counts, on February 4, 2020, the State filed a *nolle prosse* petition to drop them.

## PROCEDURAL HISTORY

On September 13, 2021, Burton sued Ziegler in federal court under 42 U.S.C. § 1983 for malicious prosecution and reckless investigation. The parties consented to proceed before a Magistrate Judge, who had jurisdiction to hear the case under 28 U.S.C. §§ 636(c)(1) and 1331. In response to Ziegler's dispositive motion, the Magistrate Judge granted summary judgment in his favor. Through a timely notice of appeal, Burton invoked this Court's appellate jurisdiction over final decisions, *see id.* § 1291, and he now disputes the rejection of his malicious prosecution claim.

## DISCUSSION

Two of the essential elements of a claim for Fourth Amendment malicious prosecution are the initiation of a proceeding without probable cause and the initiation of a proceeding with malice. *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (articulating the five elements of such a claim, which also include the initiation of a proceeding by the defendant, the resulting deprivation of liberty for the plaintiff, and the favorable termination for the plaintiff). Ziegler successfully moved for summary judgment under a *Celotex* theory by arguing that Burton failed to establish those two necessary elements of his claim, and Burton now contends that his evidence would allow a reasonable jury to resolve those elements in his favor. *See generally Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) ("[U]nder the *Celotex* approach, a moving party may . . . demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . .

4

*on which that party will bear the burden of proof at trial*.'" (emphasis and second alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

In disputing that Ziegler had probable cause to initiate proceedings against him, Burton argues that if certain facts had been included in his probable cause affidavit, then the state magistrate judge would not have issued the arrest warrant. There is, however, no constitutional requirement that an affidavit in support of an application for an arrest warrant include "every potentially evocative detail that would interest a novelist or gossip." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000); *see also id.* (recognizing that drafting an affidavit necessarily "involves an element of selectivity" and therefore that a court "cannot demand that police officers relate the entire history of events leading up to a warrant application"). Rather, the adequacy of an affidavit is evaluated under a two-step process under which a court first assesses "whether 'the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant'" and second determines "whether 'those assertions or omissions were material, or necessary, to the finding of probable cause.'" *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468–69 (3d Cir. 2016)). None of the omissions that Burton identifies fail that constitutional standard.

Two pieces of information that Burton argues Ziegler should have included in his affidavit are that D.M.'s allegations "tugged at [Ziegler's] heartstrings," Ziegler Dep. 23:1 (JA283), and that Ziegler called Burton a 'monster.' But those details concern Ziegler's opinion, not factual information, and as subjective impressions, they are irrelevant to an affidavit about whether there was probable cause to initiate proceedings against Burton. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role

5

in ordinary, probable-cause . . . analysis."); *Devenpeck v. Alford*, 543 U.S. 146, 154–55 (2004) ("Subjective intent of the arresting officer . . . is simply no basis for invalidating an arrest.").

Burton also asserts that the affidavit should have mentioned the suggestion by D.M.'s mother that D.M.'s biological father was the one who sexually assaulted her. But D.M.'s mother never said that. The record reflects only that D.M.'s mother told Ziegler that D.M.'s biological father had previously been arrested for possession of child pornography. That does not constitute a suggestion that D.M., who alleged that multiple encounters with her stepfather on his property ended with his sexually assaulting her, was somehow mistaken about her abuser's identity. Burton's assertion that D.M.'s biological father might have assaulted her is nothing more than speculation.

Finally, Burton argues that the affidavit should have included the facts that D.M.'s mother told Ziegler that her daughter was lying, that D.M. tried to recant, and that Ziegler told D.M. that she needed to pursue charges. But even with the inclusion of that information, there still would have been probable cause to arrest Burton. D.M. affirmatively identified Burton as the man who sexually assaulted and raped her. That accusation creates the "fair probability" needed for probable cause that Burton committed the crimes. *Dempsey*, 834 F.3d at 467 (quoting *Wilson*, 212 F.3d at 789); *Andrews*, 853 F.3d at 701 ("[W]hen a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause." (quoting *Wilson*, 212 F.3d at 791)). And in light of the detail of D.M.'s accusations, her later reluctance and nervousness about pressing charges, along with her mother's stated disbelief of her accusations, does not undermine the fair probability that Burton had committed the crimes. *See Dempsey*, 834 F.3d at 480 ("[P]robable cause 'does not require that officers correctly resolve

6

conflicting evidence or that their determinations of credibility, were, in retrospect, accurate' . . . ." (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005), *abrogated on other grounds by Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024))); *see also Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) ("Police officers are constantly faced with reluctant witnesses and recanted confessions. Yet they are not required 'to use the rules for summary judgment and draw inferences in favor of the suspects.'" (quoting *Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013))).

Thus, Burton has not produced evidence sufficient to show that there was not probable cause for the arrest warrant.[1]

## CONCLUSION

For the reasons discussed above, we will affirm the judgment of the District Court.

---

[1] Since Burton has failed to demonstrate one of the required elements of malicious prosecution, it is not necessary to address whether malice was present. *See DiBella*, 407 F.3d at 601.